DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Ramon R. Bryant, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In the early morning hours of April 28, 2004, Tallmadge police officers responded to a 911 call placed from Saxon Village Apartments. The 911 caller indicated that she had heard loud noises coming from the neighboring apartment. Three Tallmadge officers arrived on the scene within minutes of the 911 call and began to investigate the source of the noises. As they approached the apartment that they believed was the source, through a window officers noticed two African American males walking through the apartment. The officers then knocked on the door and announced themselves as police. No one in the apartment came to the door. As a result, the officers attempted entry through a sliding glass door which was unlocked. Immediately upon entering the apartment, officers noticed a man lying prone on the floor. The officers then retreated from the apartment. As they retreated, shots were fired from the apartment, shattering the glass in the sliding glass door.
 {¶ 3} The officers then retreated to safer positions and called for backup. Shortly thereafter, Akron police officers arrived on the scene in support. The officers stationed themselves around the apartment and waited twenty to thirty minutes. Near the end of their wait, officers heard several shots ring out. Minutes later, Appellant emerged from the apartment and was arrested.
 {¶ 4} Officers then entered the apartment and discovered two individuals, Kameron McKenzie and Darnell Thomas. Both individuals were pronounced dead at the scene. As a result of an investigation, Appellant was charged with numerous felonies and stood trial before a jury. Following trial, Appellant was convicted of two counts of aggravated murder in violation of R.C.2903.01(B), each with a gun specification; one count of murder in violation of R.C. 2903.02(A), with a gun specification; four counts of felonious assault in violation of R.C. 2903.11, three counts with a gun specification; two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), each with a gun specification; two counts of aggravated burglary in violation of R.C. 2911.11(A)(2), both with a gun specification; and one count of possession of cocaine in violation of R.C. 2925.11(A). During sentencing, the trial court merged several of Appellant's convictions and he received an aggregate sentence of seventy-two years to life. Appellant timely appealed his convictions, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"APPELLANT'S CONVICTIONS FOR AGGRAVATED MURDER AND MURDER OF DARNELL THOMAS WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his first assignment of error, Appellant contends that the State produced insufficient evidence to support his convictions and that his convictions were against the manifest weight of the evidence. This Court disagrees.
 {¶ 6} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's assertion that his conviction was against the manifest weight of the evidence first as it is dispositive of Appellant's claim of insufficiency.
 {¶ 7} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 8} We begin by noting that Appellant has only challenged his convictions for aggravated murder and murder as they relate to the death of Darnell Thomas. Appellant has not challenged any of his remaining convictions. With respect to aggravated murder, R.C. 2903.01(B) provides as follows:
"No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape."
In addition, with respect to murder, R.C. 2903.02(A) provides as follows: "No person shall purposely cause the death of another[.]"
 {¶ 9} In support of his assertions, Appellant argues that the State failed to prove that he acted purposefully in causing the death of Thomas and that the evidence weighed heavily in favor of a finding that Thomas committed suicide. We find that both of Appellant's arguments lack merit.
 {¶ 10} Because a defendant's mental state is difficult to demonstrate with direct proof, it may be "inferred from the surrounding circumstances." State v. Logan (1979),60 Ohio St.2d 126, 131. In the instant matter, this Court cannot say that the jury lost its way in concluding that Appellant purposefully caused the death of Thomas.
 {¶ 11} As the circumstances surrounding Thomas' death involve the testimony of both medical experts, we will first address Appellant's assertions that the testimony of his expert greatly outweighed the testimony provided by the State's expert. In support of its case, the State provided the testimony of Dr. George Sterbenz, the Chief Deputy Medical Examiner in Summit County. In response to Dr. Sterbenz's testimony, Appellant provided the testimony of Dr. Daniel Spitz, the Medical Examiner for Macomb County, Michigan.
 {¶ 12} Dr. Sterbenz testified as follows. He was asked to examine the body of Thomas and determine, to the best of his ability, the weapon which most likely caused his death. Dr. Sterbenz testified that matching a weapon to a wound is not an exact science, but noted that the weapon which caused the injury would have characteristics in common with the wound impression left on the victim. In an effort to aid his investigation, Dr. Sterbenz used a clay substance and test fired the recovered weapons into the clay. Dr. Sterbenz then analyzed the characteristics of the wound impressions left by both the 9mm Ruger and the .380, the two weapons recovered from the apartment. During his testimony, Dr. Sterbenz stressed that while the clay did not respond in the exact manner that the human skull would, it nonetheless provided a sufficient basis for comparison.
 {¶ 13} Dr. Sterbenz's testimony continued as follows. Neither weapon could be said to be a conclusive match to Thomas' wound. However, Dr. Sterbenz noted that the wound impression left on Thomas was consistent with a gun similar to the .380. In support of his conclusion, Dr. Sterbenz noted that the wound included both circular impressions and rectangular impressions. While the impression left in the clay by the .380 did not create exact matches to the circular pattern, it did create rectangular impressions which were similar to those surrounding Thomas' wound.
 {¶ 14} Dr. Sterbenz also concluded that the Ruger could not have made the impression left on Thomas. "I cannot conceive of a reasonable scenario by which the Ruger could have inflicted [Thomas'] injury." He went on to later note, "I am saying to a very strong degree of medical certainty that it just can't be this gun, a gun like this, the 9mm Ruger." Dr. Sterbenz based his conclusion on the physical structure of the Ruger. He noted that one expects to see an impression from the firing pin on the Ruger which was absent on Thomas. Dr. Sterbenz also noted that the Ruger did not create the rectangular impressions that were present with Thomas' wound. Dr. Sterbenz also noted the differences in the physical characteristics of the two weapons and visually demonstrated to the jury how the slide on the Ruger protruded and operated differently than the .380. Based upon those differences, Dr. Sterbenz opined that to keep the Ruger tight enough to Thomas' head to create the contact wound seen on Thomas, the bullet's trajectory would have been altered. That is, the pressure exerted on the Ruger to keep its slide pressed against Thomas' head would have changed the path of the bullet. Accordingly, Dr. Sterbenz concluded that the Ruger was not the weapon that killed Thomas.
 {¶ 15} Dr. Sterbenz also relied upon the amount of destruction that resulted from the bullet traveling through Thomas' skull. Dr. Sterbenz noted that the ammunition fired by the .380 was more consistent with the damage present in Thomas' skull because it was slightly larger with more powder. Accordingly, he concluded that he would have expected less internal damage if Thomas had been shot with ammunition from the Ruger.
 {¶ 16} In response, Dr. Spitz testified that the Ruger was more likely the weapon that caused Thomas' wound. Dr. Spitz noted that there were several markings in the wound impression that were inconsistent with the .380. He also testified that a marking near Thomas' wound was consistent with a portion of the firing pin on the Ruger. Dr. Spitz also noted that it was significant to him that the Ruger had blood and hair on its barrel and the .380 did not. Dr. Spitz noted that such a finding is consistent with the weapon having inflicted a contact wound, that is, being pressed against the victim when fired. Dr. Spitz also accounted for the size discrepancy in the wound by noting that the skin would have expanded because of the gases that were forced into it when the gun was fired. Dr. Spitz disagreed with Dr. Sterbenz and noted that pressing the Ruger tightly against the skull would not have altered the path of the bullet. In addition, Dr. Spitz testified that the amount of destruction caused by the bullet could not be utilized to determine the caliber of weapon used. Finally on direct, Dr. Spitz noted that the Ruger had vents on its upper surface to allow gases to be expelled, thus accounting for the lesser degree of internal damage seen within Thomas' skull.
 {¶ 17} On cross-examination, Dr. Spitz admitted that he was unaware that the Ruger had been used to bludgeon Griffin. Dr. Spitz also admitted that such a use of the weapon could account for the hair and blood located on the Ruger.
 {¶ 18} Finally, we also note that the jury heard conflicting evidence regarding the location from where the Ruger was recovered. Dr. Sterbenz testified that he believed that the Ruger was located in Thomas' left hand, a location inconsistent with the entrance wound on the right side of Thomas' head. In contrast, Appellant testified that Thomas carried the Ruger in his right hand.
 {¶ 19} Accordingly, our review of the record indicates that Dr. Spitz's conclusion was undermined by his admission that he was unaware that the Ruger had been used to bludgeon a victim, Lamal Griffin. He readily admitted that the existence of trace evidence on the gun was an important factor in his conclusion. Further, our review of the record indicates that both experts were well-qualified in their fields and both performed thorough examinations of the weapons involved and of Thomas' wounds. We do note, however, that Dr. Sterbenz was able to directly examine Thomas' wound, while Dr. Spitz relied upon pictures of the wound. Based upon the above testimony, we cannot say that Dr. Spitz's testimony outweighed the testimony of Dr. Sterbenz, let alone outweighed his testimony significantly enough to warrant reversal under a manifest weight standard of review. Accordingly, the jury was left with the conflicting conclusions of two experts. Such conflicting testimony does not warrant reversal simply because the jury chose to believe the State's expert. State v.Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28.
 {¶ 20} Having found that the jury did not err in relying upon Dr. Sterbenz's testimony, we proceed to examine Appellant's contentions that the State failed to prove the mens rea, purposefully, associated with aggravated murder. Accepting the jury's conclusion that Thomas' wound was inflicted by the .380, we are left with the following evidence.
 {¶ 21} Lamal Griffin testified as follows. He was in the apartment with Kameron McKenzie when someone knocked on the door. Griffin opened the door because he recognized Thomas and retreated to the living room. When he turned back around, Appellant was in the apartment as well and was holding a gun on him. Thomas also brandished a gun and Appellant entered the bedroom of the apartment. Appellant reappeared from the bedroom, holding his gun to McKenzie's head. Appellant and Thomas then ordered McKenzie to the ground where Thomas proceeded to choke him with an extension cord. Appellant then ordered Griffin to the bathroom using the gun and ordered him into the bath tub. Griffin refused to cooperate and the two returned to the living room. Appellant then began choking McKenzie for three to four minutes. During this time, Thomas began to choke Griffin and demand to know where Griffin's money was located. Griffin went on to testify that Appellant then hit him in the head with a baseball bat and Thomas bludgeoned him with a gun. Griffin testified that when he woke up, Thomas was dead on the floor of the apartment. Later, Griffin realized that he had been shot as well.
 {¶ 22} In stark contrast to Griffin's testimony, Appellant testified as follows. He did not have a gun at any point during the robbery. Rather, while Thomas and Griffin fought, a fact Griffin denies, Griffin attempted to reach under the couch. Thereafter, Thomas ordered Appellant to search the couch and Appellant discovered the .380. Appellant testified that he only handled the weapon in order to throw it to Thomas. Appellant went on to testify that he only pretended to ransack the apartment because he feared Thomas. He stated that he never attacked Griffin or McKenzie and was simply an innocent bystander.
 {¶ 23} However, inconsistent is perhaps not a strong enough term to describe Appellant's testimony. On direct, Appellant never mentioned anyone other than Thomas committing the robbery. On cross-examination, Appellant introduced a third-party that he referred to as Mann. At different times, Appellant stated that Mann actually robbed him by ordering him into the bathroom and forcing him to take off his clothes. Appellant then stated that Mann and Thomas robbed McKenzie and Griffin and that he witnessed the crime. Later, Appellant stated that he had not witnessed Mann do anything and that Mann had in fact left the apartment immediately after forcing Appellant to remove his clothes. Still later during cross-examination, Appellant stated that Mann never existed.
 {¶ 24} Succinctly stated, the only consistency in Appellant's testimony was the fact that it was inconsistent. However, his testimony did implicate Thomas in every crime that occurred in the apartment. After implicating Thomas for all of the events noted above, Appellant testified that Thomas was so distraught at the thought of returning to prison that he committed suicide. According to Appellant, however, Thomas did take the time to shoot Griffin while he lay unconscious just prior to killing himself.
 {¶ 25} Upon our independent review of the record, we have little difficulty in agreeing with the jury's determination that Appellant lacked credibility. As such, the following facts remain. McKenzie had already been murdered prior to Thomas' death; Griffin had been beaten unconscious prior to Thomas' death; and Appellant was the only other person in the apartment at the time of Thomas' death. In addition, as noted above, the State provided substantial evidence that Thomas' wound was inflicted by the .380. It is undisputed that the .380 was found under the bed in the apartment's bedroom, nowhere in the vicinity of Thomas' body. Further, both experts agree that Thomas' wound was accurately described as a contact wound and that the gun was pressed against his head when fired.
 {¶ 26} Based upon the facts presented at trial, the jury had ample evidence from which to infer that Appellant purposefully caused Thomas' death. Griffin testified that Appellant had already caused the death of McKenzie, had held both him and McKenzie at gun point, and had beaten him with a baseball bat. Further, there is no evidence in any part of the record to support Appellant's claim that Thomas' injury "could have just as easily have been negligently or accidentally inflicted as purposefully inflicted." Rather, the record reflects that Appellant denied any participation in Thomas' killing. Based upon his numerous inconsistent statements, the jury chose not to believe his statements. Thereafter, they properly relied upon the type of injury inflicted and the manner in which it was inflicted to infer that Appellant purposefully caused Thomas' death. SeeState v. Robinson (1954), 161 Ohio St. 213, paragraph five of the syllabus. Accordingly, we cannot say that the jury clearly lost its way in finding Appellant guilty of aggravated murder and murder in connection with the death of Thomas.
 {¶ 27} Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. See Roberts, supra, at *2. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE TERMS OF IMPRISONMENT IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO TRIAL BY JURY."
 {¶ 28} In his second assignment of error, Appellant argues that the trial court engaged in unconstitutional fact finding in order to impose consecutive sentences for his convictions. Specifically, Appellant asserts that U.S. v. Booker (2005),543 U.S. 220 and Blakely v. Washington (2004), 542 U.S. 296 compel reversal of his sentence. We disagree.
 {¶ 29} This Court has previously held that Blakely is inapplicable to Ohio's sentencing scheme. State v. Rowles, 9th Dist. No. 22007, 2005-Ohio-14, at ¶ 19. We have also held thatBooker provided no rationale for this Court to revisit our prior holding. State v. Burns, 9th Dist. No. 22198,2005-Ohio-1459, at ¶ 5. Accordingly, Appellant's second assignment of error is overruled.
 III. {¶ 30} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Boyle, J. concur.