OPINION
{¶ 1} Plaintiff-appellant, John H. Parsons, appeals from a judgment of the Ohio Court of Claims finding defendant-appellee, Washington State Community College ("WSCC"), not liable on plaintiff's negligence claim against defendant. Because competent, credible evidence supports the trial court's judgment, we affirm.
 {¶ 2} On May 8, 2002, plaintiff, a student at WSCC, attended his early morning business law class that Professor Helen Hirschi taught. On that day, Hirschi conducted a demonstration in which she tossed a book bag in the air; plaintiff claimed the book bag hit him in the head, neck and shoulder, resulting in his injury. Plaintiff filed a complaint against WSCC asserting a claim of negligence. The trial court found plaintiff failed to prove by a preponderance of the evidence that the book bag hit him. The trial court further concluded that, even if plaintiff were hit, plaintiff failed to prove the incident proximately caused his injuries. Plaintiff appeals, assigning the following errors:
I. FIRST ASSIGNMENT OF ERROR
THE TRIAL JUDGE ERRED BY IGNORING TESTIMONY OF AN EYE-WITNESS WITH A CLEAR VIEW OF THE INCIDENT WHO TESTIFIED THAT HE SAW THE BOOK BAG HIT [PLAINTIFF], AND INSTEAD THE TRIAL COURT ERRONEOUSLY CONCLUDED THAT THE BOOK BAG DID NOT HIT [PLAINTIFF], WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
II. SECOND ASSIGNMENT OF ERROR
THE TRIAL JUDGED ERRED BY IGNORING TESTIMONY OF [PLAINTIFF'S] NEUROSURGEON RELATING CAUSATION OF [PLAINTIFF'S] INJURIES TO THE BOOK BAG INCIDENT BY A REASONABLE DEGREE OF MEDICAL PROBABILITY, AND INSTEAD ERRONEOUSLY RELIED ON ASSUMPTIONS AND UNSUPPORTED INNUENDO TO CONCLUDE THAT [PLAINTIFF'S] INJURY WAS NOT RELATED TO THE BOOK BAG INCIDENT, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
III. THIRD ASSIGNMENT OF ERROR
THE TRIAL JUDGE ERRED BY IGNORING TESTIMONY OF [PLAINTIFF'S] NEUROSURGEON STATING THAT HIS TREATMENT OF [PLAINTIFF] WOULD NOT HAVE CHANGED IF HE HAD KNOWN ABOUT HIS DECADESO-LD MEDICAL HISTORY.
IV. FOURTH ASSIGNMENT OF ERROR
THE TRIAL JUDGE'S DECISION AND JUDGMENT ENTRY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 3} Each of plaintiff's assignments of error requires this court to determine whether the trial court's decision is against the manifest weight of the evidence. In civil cases, if some competent, credible evidence supports all the essential elements of the case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 280. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment." Macklin v. OhioDept. of Rehab. Corr., Franklin App. No. 01AP-293, 2002-Ohio-5069, at ¶ 20, citing Estate of Barbieri v. Evans
(1998), 127 Ohio App.3d 207, 211. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77.
 {¶ 4} The evidence reveals that Hirschi, plaintiff's business law instructor, was known to be very animated in the classroom; she moved about the room using different objects as props for her demonstrations. Her lesson plan for May 8, 2002 involved a discussion of shipping and destination contracts. In an attempt to demonstrate the destruction of goods en route to the destination point, Hirschi picked up another student's book bag and tossed it in the air. Instead of the bag coming down at her feet as she planned, it landed behind her.
 {¶ 5} While plaintiff agrees Hirschi tossed the bag in the air, he testified that as the bag came down, it hit first the back of his head below his left ear, and then his shoulder and his back. Plaintiff testified he immediately reacted and yelled at Hirschi that he would go to the dean if she ever did that again. Hirschi testified she apologized and asked plaintiff whether he was okay, to which he replied he was fine. Hirschi resumed class instruction. When class ended and the students began to exit, Hirschi again asked plaintiff whether he was okay. Hirschi testified plaintiff replied he was fine; plaintiff testified he told Hirschi he was hurt.
 {¶ 6} At around 8:30 a.m., or about ten minutes after plaintiff's business law class ended, plaintiff reported the incident to another professor, David Conrath, and discussed it with Conrath. Conrath testified he had two conversations with plaintiff: the first one occurred around 8:30 a.m. and the second was around 9:30 a.m. According to Conrath, plaintiff did not tell him about the incident until the second conversation. Conrath further testified plaintiff did not indicate that he was hurt or that he wanted or needed to go to the hospital. Rather, recalling plaintiff's comments to be complaints about Hirschi's conduct, Conrath stated "it was more the complaint of, you know, why did an instructor do this type of thing, as opposed to, `Oh, I'm hurt' type situation." Conrath advised plaintiff to go to Dean Stone.
 {¶ 7} Plaintiff testified that he looked for Dean Stone but could not find her, so he studied for an hour and then attended Conrath's class where he took a written two-hour exam. Although plaintiff testified he felt that because of the incident in Hirshi's classroom he could not take the exam, he did not request permission to take the exam at a later date. Similarly, although plaintiff testified he could not finish the exam because he was so confused and disoriented by the incident in Hirschi's class, plaintiff did not indicate to Conrath that he needed more time to finish the exam. Conrath testified plaintiff failed the exam.
 {¶ 8} After taking the exam, plaintiff went to Dean Stone's office; Dean Stone asked plaintiff to fill out an incident report. Plaintiff filled out the report stating that Hirschi threw a book bag full of books at him. By contrast, Hirschi testified the bag was very light in weight. The owner of the book bag, Kristin Kennedy, testified the bag did not contain any books at the time Hirschi tossed it; rather it held only a daily planner, a few pencils, and a few gum wrappers. Subsequent to the incident, a private investigator, Terry Irvine, contacted Kennedy and purchased the book bag from her, along with its contents at the time Hirschi threw it. Irvine then weighed the bag on a produce scale at a farmer's market in Marietta, Ohio. The bag and its contents weighed 1.44 pounds.
 {¶ 9} Dean Stone did not recall that plaintiff had difficulty writing or walking. When she asked plaintiff if he wanted to be transported to the hospital, plaintiff replied that he would drive himself. Plaintiff arrived at Marietta Memorial Hospital where he initially was examined in the emergency room. Plaintiff filled out paperwork in which he complained of neck pain and tingling in his left hand and fingers; plaintiff denied having any past history of medical problems. Plaintiff then was sent to the office of Dr. Abdi Ghodsi, a resident neurosurgeon. After performing an MRI, Dr. Ghodsi concluded that plaintiff suffered (1) a spinal cord contusion, or a bruise to the spinal cord, at the C-6 level caused by some type of trauma to the neck, (2) spondylosis, a degenerative condition of the cervical spine where arthritis causes bony spurs, or osteophytes, and degeneration of the discs, (3) stenosis, a congenital narrowing of the spinal canal, and (4) a disk osteophyte protrusion into the spinal canal. Dr. Ghodsi's opinion that plaintiff suffered a spinal cord contusion was based on a white, bright spot found on the "sagittal" view of the MRI.
 {¶ 10} Although plaintiff indicated on the hospital form that he had no previous medical conditions, plaintiff's history of problems began as early as 1980 when he was employed as a carpenter. At that time, plaintiff was working at a construction site in Florida when a co-worker threw a 126-pound beam from scaffolding. Plaintiff caught the beam and testified he "had trauma from the head down through my whole entire back." (Tr. Vol. I, 129.) In 1988, plaintiff was injured while he was working as a general foreman. Plaintiff testified that two drift eliminators came out of a 40-foot tower and hit him directly in the back, knocking him into a pile of concrete. Plaintiff stated the incident compounded his injuries from 1980. In 1990 or 1991, plaintiff was working at a powerhouse, and he slipped and fell on ice; plaintiff hit his head, back, and neck. Plaintiff testified he protected himself by falling on his hands and years later, in 1998, plaintiff was diagnosed with carpal tunnel syndrome. In 1994, plaintiff was in a car accident where a car traveling approximately 30 miles per hour hit plaintiff's car from behind. Plaintiff suffered injury to his back, shoulders, and neck in that accident. In 1994, plaintiff visited Dr. Falor; Dr. Falor reported a degenerative condition involving the cervical and lumbar spine.
 {¶ 11} Plaintiff testified he saw two chiropractors, both named Piersol, approximately once a month every year from 1990 through 2002 for various things, including injuries to his neck. Plaintiff stated that between 1994 and 2002, his neck pain was between two and four on a scale of ten, and he admitted he has not had full range of motion in his neck since the 1990 accident. In trial Exhibit I, Dr. Piersol discussed treatment for "cervical 30 extension," or neck pain, in connection with plaintiff's request for reimbursement from workers' compensation. Workers' compensation forms dated November 15, 1999, February 21, 2000, and December 6, 2001, reference cervical pain as one of the clinical findings for which plaintiff was being treated. Nonetheless, upon being treated at the hospital, plaintiff denied having any history of neck problems and failed to inform Dr. Ghodsi of such history.
 {¶ 12} Plaintiff's condition following his presentation at the hospital on May 8, 2002 began to improve, and he was released from the hospital two days after being admitted. Dr. Ghodsi treated plaintiff with steroids and examined him again four weeks later. Although plaintiff's pain improved, Dr. Ghodsi performed neck surgery. Dr. Ghodsi testified to a reasonable degree of medical probability that the most probable cause of plaintiff's spinal cord contusion was his being hit with the book bag. According to Dr. Ghodsi, in identifying the most probable cause of the contusion "you have to go with the patient's history." (Ghodsi Depo., 20.)
 {¶ 13} WSCC presented the expert testimony of Dr. Benedict Colombi, a board-certified neurosurgeon since 1978 with over 25 years of experience. Dr. Colombi reviewed all of plaintiff's medical records, as well as plaintiff's December 24, 1998 and May 8, 2002 MRI's. Dr. Colombi testified plaintiff suffered from the degenerative and congenital conditions Dr. Ghodsi identified that occur over time, but he disagreed with Dr. Ghodsi's conclusion that plaintiff suffered a spinal cord contusion as a result of the classroom incident. Dr. Colombi explained that a spinal cord contusion would appear on both the "sagittal" and "axial" views of the MRI, and plaintiff's MRI showed a white spot only on the "sagittal" view. Dr. Colombi stated he did not see "anything that [he] would be willing to call a spinal cord contusion." (Columbi Depo., 16.) According to Dr. Colombi, the white spot Dr. Ghodsi referred to was probably an artifact: "I'm telling you it's not a contusion." Id. at 48. Dr. Colombi testified that the radiologist who interpreted plaintiff's May 8, 2002 MRI agreed that plaintiff did not suffer a spinal cord contusion.
 {¶ 14} Dr. Colombi further testified the 1998 MRI was not significantly different than plaintiff's 2002 MRI. In addition, Dr. Colombi opined that plaintiff's physical exams at the hospital, performed by different independent examiners, were inconsistent with plaintiff's claimed injury. For example, a physician assistant examined plaintiff, under the supervision of a doctor, and reported plaintiff's inconsistent neurological findings, although plaintiff complained of difficulty moving his left hand and wrist, he was able to abduct at the shoulders when he was asked to do so and was able to push himself back further on the bed using both extremities.
 {¶ 15} Several nurses also examined plaintiff each hour; according to Dr. Colombi, the only consistent finding in the nurses' notes was plaintiff's weak left grip, a finding Dr. Colombi opined likely was attributable to plaintiff's carpal tunnel syndrome. As Dr. Columbi explained, the person "that examined [plaintiff] in the emergency room gives two tests that give another reason for diminished grip strength, one is a Tinel's signs and one is a Phalen's sign, which are tests specifically for carpal tunnel syndrome, and his hand went numb with both of those tests, therefore, in my opinion it is just as likely for this patient to have weakness of his grip from a carpal tunnel than from a neck injury." Id. at 40. As Dr. Columbi summarized, the "only thing objective and the only thing that is present in all exams is some decreased strength of his left grip." Id. at 36.
 {¶ 16} Moreover, because a person who sustains a spinal cord contusion suffers some type of permanent injury, Dr. Colombi found it remarkable that plaintiff returned to normal within two days, such recovery being "totally out of the realm of my experience as a neurosurgeon." Id. at 37. Dr. Colombi opined to a reasonable degree of medical probability that the surgery performed on plaintiff was not the result of any recent injury to the neck, but rather the reason for the surgery was plaintiff's "chronic complaints of neck pain, arm discomfort and his chronic condition of cervical stenosis." Id. at 28.
 {¶ 17} Within those facts, plaintiff's negligence claim required that he prove by a preponderance of the evidence that WSCC owed him a duty, that WSCC breached its duty, and that the breach proximately caused his injuries. Strother v. Hutchinson
(1981), 67 Ohio St.2d 282. The status of the person who enters upon another's premises determines the scope of the legal duty owed to that person. Gladon v. Greater Cleveland RegionalTransit Auth. (1995), 75 Ohio St.3d 312, 315.
 {¶ 18} The trial court found plaintiff was a business invitee as a student at WSCC. Baldauf v. Kent State Univ. (1988),49 Ohio App.3d 46. The trial court also found that Hirschi breached her duty of reasonable care when she tossed the book bag in a classroom filled with students. The parties do not appeal those conclusions. The trial court, however, found that the book bag did not contact plaintiff, and even if it did, it did not proximately cause plaintiff's neck injuries and resulting surgery. In his first assignment of error, plaintiff complains the trial court improperly disbelieved his witness, Seth Dettore, who testified he had a clear view of the incident and saw the book bag graze plaintiff's shoulder.
 {¶ 19} Dettore testified he sat near the front of the room, in front of plaintiff in the same row, and had a clear view of the incident. Stating that the book bag came out of Hirschi's hands, Dettore recalled it "grazing part of [plaintiff's] shoulder and arm" and then falling to the floor. (Tr. Vol. I., 104.) Four other witnesses, however, testified contrary to plaintiff. Stevi Elliott, who had a clear view of the incident, testified she did not see the bag hit plaintiff but recalls that plaintiff immediately reacted and stated to Hirschi that if it happened again, he would go to the dean. Jasmine Stincer testified she saw the bag as it was thrown into the air, believed it did not hit plaintiff, but recalled plaintiff being upset and agitated with Hirschi. Stincer further testified she heard plaintiff tell Hirschi he was fine. Shauntae Noland, who stated she saw the bag from the moment it was in the air to the moment it hit the ground, testified that she did not see the bag hit plaintiff but remembered plaintiff yelling at Hirschi.
 {¶ 20} The trial court heavily relied on the testimony of the fourth witness, Jan Berry. Berry testified she had an unobstructed view of plaintiff and recalled that the bag did not hit him. Berry also wrote a statement regarding the incident, recording that she heard plaintiff tell Hirschi after class that because he had back problems, she needed to be careful to avoid something hitting him. Berry further testified the book bag was empty; she remembered Kennedy taking books out of the bag and putting them on her desk. Kennedy confirmed that the bag contained her daily planner, three pencils, and some gum wrappers.
 {¶ 21} Plaintiff's argument reduces to a contention that, for various reasons, the trial court should have believed Dettore over the other four eyewitnesses. The trier of fact is responsible for determining the credibility of a witness and may believe all, part or none of a witness' testimony, giving a witness little or no weight at all. Botts v. Tibbs (May 24, 1999), Butler App. No. CA98-06-125. Indeed, the precise function of the trier of fact is to ascertain the truth where conflicting testimony exists. Id. Because the trial court, as trier of fact, could properly believe the witnesses who testified that the book bag did not hit plaintiff and could properly disbelieve plaintiff and Dettore, some competent, credible evidence supports the trial court's decision, and it is not against the manifest weight of the evidence: Noland testified she saw the book bag from the time it left Hirschi's hands to the time it landed on the floor, and it did not hit plaintiff anywhere on his body. Accordingly, plaintiff's first assignment of error is overruled.
 {¶ 22} In the second and third assignments of error, plaintiff contends the trial court erred by ignoring Dr. Ghodsi's testimony regarding causation, as well as his testimony that his treatment of plaintiff would not have changed had he known plaintiff's prior history of cervical problems. Once again, plaintiff is essentially arguing the trial court should have believed plaintiff's expert, Dr. Ghodsi, rather than WSCC's expert, Dr. Colombi. Where conflicting expert testimony exists, the trier of fact is responsible for determining which expert is more credible. Reder v. Antenucci (1989), 62 Ohio App.3d 139;State v. Bryant, Summit App. No. 22723, 2006-Ohio-517
(conflicting expert testimony does not warrant reversal simply because the jury chose to believe the state's expert).
 {¶ 23} Dr. Ghodsi and Dr. Colombi came to opposite conclusions about whether the book bag injured plaintiff. Neither Dr. Ghodsi nor Dr. Colombi saw what happened in Hirschi's classroom. Dr. Colombi found no evidence of a spinal cord contusion; Dr. Ghodsi concluded plaintiff suffered such a contusion. Dr. Colombi testified that the surgery was performed due to plaintiff's chronic cervical stenosis; Dr. Ghodsi testified the surgery was the result of the book bag incident. Dr. Colombi reviewed plaintiff's medical records dating back to his initial injury; Dr. Ghodsi did not have the benefit of those records in determining causation because plaintiff failed to inform Dr. Ghodsi of his extensive prior history of neck problems, resulting in Dr. Ghodsi's medical opinion being premised on incomplete information regarding plaintiff's medical history. Dr. Colombi is a board-certified neurosurgeon with over 25 years of experience; Dr. Ghodsi is not board certified and was a resident neurosurgeon at the time in question.
 {¶ 24} The trial court, as trier of fact, assumed its role of determining which expert was more credible where conflicting testimony existed and found Dr. Columbi's testimony more persuasive; plaintiff has not demonstrated why the trial court should have discredited Dr. Colombi. Because Dr. Columbi's testimony supports the trial court's conclusion that plaintiff suffered no injury as a result of the book bag incident, the trial court's conclusion is not against the manifest weight of the evidence. As WSCC points out, plaintiff has the burden to prove each element of his negligence claim by a preponderance of the evidence; the trial court's credibility determinations mean plaintiff failed to meet his burden. Accordingly, plaintiff's second and third assignments of error are overruled.
 {¶ 25} In the fourth assignment of error, plaintiff maintains generally the judgment is against the manifest weight of the evidence. Because this assignment of error duplicates plaintiff's more specific assignments of error, it is overruled for the reasons set forth above.
 {¶ 26} Having overruled plaintiff's first, second, third, and fourth assignments of error, we affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
Sadler and French, JJ., concur.