OPINION
{¶ 1} Plaintiffs-appellants, Merlene Coulter ("Mrs. Coulter") and Donald Coulter (collectively, "appellants"), appeal the judgment of the Franklin County Court of Common Pleas, entered upon a jury verdict, in favor of defendants-appellees, Desmond J. Stutzman, D.O. ("Dr. Stutzman"), and Orthopedic Neurological Consultants, Inc. (collectively, "appellees"), in this medical negligence action. *Page 2 
 {¶ 2} The following facts and procedural history are taken from the record and are undisputed unless otherwise noted. On December 17, 2003, Mrs. Coulter saw Dr. Stutzman for pain and tingling in both of her hands. Based on his physical examination and a follow-up EMG, Dr. Stutzman diagnosed Bilateral Carpal Tunnel Syndrome. Carpal Tunnel Syndrome is pressure on the median nerve as it passes through the carpal tunnel in the palm of the hand. This pressure produces numbness, tingling, and pain. On January 12, 2004, at another appointment, during which Mrs. Coulter complained of constant tingling in both hands, Dr. Stutzman advised her that she would need surgery at some point in order to relieve her symptoms. On that date, she decided to undergo the surgery on her right hand immediately. She and Dr. Stutzman discussed risks and benefits, and possible complications, including infection, bleeding, continued numbness and tingling, and nerve, tendon or artery damage. Mrs. Coulter signed a consent form for the surgery.
 {¶ 3} On January 20, 2005, Dr. Stutzman performed the right carpal tunnel release surgery on Mrs. Coulter. He made an incision over the transverse carpal ligament at the level of the mid-palm, excising longitudinally the complete length of the ligament. This is the object of the surgery, because it is this that relieves the pressure being exerted on the median nerve. Unbeknownst to Dr. Stutzman at the time, however, he had transected the median nerve. His operative notes indicate that there was nothing abnormal about Mrs. Coulter's wrist anatomy.
 {¶ 4} During the procedure, Dr. Stutzman used an open surgical technique to allow as much visualization of the anatomy as possible. However, Dr. Stutzman explained at trial, the median nerve lies directly below the transverse carpal ligament, so *Page 3 
the surgeon performing the carpal tunnel release cannot visualize the nerve during the procedure unless he performs extensive dissection and makes a large excision. He further explained that the location of the surgical area contains many tendons, arteries, nerves, and other structures, all in a very small space, making injury to structures surrounding the transverse carpal ligament a risk of the surgery.
 {¶ 5} Following the surgery, Mrs. Coulter began experiencing excruciating pain in the right hand and was unable to move her fingers. Dr. Stutzman told her that the pain was likely due to the anesthetic used during the surgery, but the pain did not subside. Eventually, on May 3, 2004, she saw hand surgeon Dr. James Nappi ("Dr. Nappi"). Following an MRI, which ruled out an incomplete carpal tunnel release, Dr. Nappi conducted other diagnostic procedures, after which he determined that she had experienced a 95 percent median nerve transection which, according to Dr. Nappi, is catastrophic and devastating to hand function. Ultimately, Dr. Nappi performed a surgical repair of the median nerve. He referred Mrs. Coulter for physical therapy, which resulted, initially, in some gains in sensory and motor function. However, thereafter, she did not plateau or experience further improvement; rather, she regressed, which can occur in cases of nerve injuries. Dr. Nappi could not explain this regression.
 {¶ 6} On August 29, 2005, appellants filed their complaint against appellees, alleging that Dr. Stutzman negligently performed Mrs. Coulter's right carpal tunnel release surgery, and asserting respondeat superior liability against Orthopedic Neurological Consultants, Inc. The case went to trial before a jury from November 26, 2007 until December 3, 2007. By a six to two vote, the jury returned a verdict in appellees' favor, *Page 4 
finding that appellees were not negligent. Appellants timely appealed, and advance the following two assignments of error:
ASSIGNMENT OF ERROR NO. 1
 The trial court committed plain error when it instructed the jury on remote cause.
 ASSIGNMENT OF ERROR NO. 2
 The trial court's verdict in favor of Defendants Desmond J. Stutzman, D.O. and his employer Orthopedic Neurological Consultants, Inc. was against the manifest weight of the evidence and should therefore be reversed.
 {¶ 7} In their first assignment of error, appellants argue that the trial court erred in instructing the jury on remote cause. The specific instruction that appellees proposed and the trial court gave, taken verbatim from 1 Ohio Jury Instructions (2004), Section 11.20, reads as follows:
 A person is not responsible for injury or damage to another if his or her negligence is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of any injury or damage.
(Tr. Vol. IV at 147.)
 {¶ 8} Generally, a trial court should give a requested instruction if it is a correct statement of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591, 575 N.E.2d 828. Appellants argue that the trial court erred in giving the remote cause instruction because there was no evidence from which the jury could conclude that Mrs. Coulter's injuries could be attributed to any cause other than Dr. Stutzman's transection of her median nerve. *Page 5 
 {¶ 9} We note initially that the record contains no objection to the remote cause instruction.[1] Thus, appellants have waived all but plain error with respect to this issue. "When a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction." Carr v. PreferredInc. (Aug. 10, 2000), Cuyahoga App. No. 76476, 2000 Ohio App. LEXIS 3624, at *6, citing Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121,679 N.E.2d 1099.
 {¶ 10} But appellants argue that it was plain error for the court to have given the remote cause instruction. The Goldfuss court has cautioned courts with respect to the use of the plain error doctrine in civil cases, as follows:
 Although in criminal cases "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court," Crim. R. 52(B), no analogous provision exists in the Rules of Civil Procedure. The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.
(Emphasis sic.) Goldfuss, supra, at 121. *Page 6 
 {¶ 11} In the present case, Jury Interrogatory No. 1 asked the jury "[w]ere the defendants Dr. Stutzman and his employer Orthopedic 
Neurological Consultants, Inc. negligent?" The jury answered "No." It is clear that the jury never reached the issue of causation because it found that appellees were not negligent. The plain language of the jury instruction at issue indicates that the instruction on remote cause comes into play only after a defendant has been found to have been negligent. Because the jury in this case determined that appellees were not negligent, the remote cause instruction is not germane to its verdict. For this reason, we perceive no exceptional circumstances that require the application of the plain error doctrine to prevent a manifest miscarriage of justice, or to prevent a material adverse effect on the character of, and public confidence in, judicial proceedings. Accordingly, appellants' first assignment of error is overruled.
 {¶ 12} In their second assignment of error, appellants argue that the jury's verdict is against the manifest weight of the evidence. We recently explained the standard governing our review of manifest weight challenges in a case such as the present one:
 Civil [j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. [A]n appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge.
 When considering whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct. The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial *Page 7 
judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.
(Citations omitted.) Boyer v. Ohio State Univ. Med. Ctr., Franklin App. No. 07AP-742, 2008-Ohio-2278, ¶ 26-27.
 {¶ 13} The Supreme Court of Ohio has established the elements of a cause of action for medical negligence:
 1. In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.
 2. The standard of care for a physician or surgeon in the practice of a board-certified medical or surgical specialty should be that of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field * * *
Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 75 O.O.2d 184,346 N.E.2d 673, syllabus.
 {¶ 14} It was undisputed at trial that Dr. Stutzman transected Mrs. Coulter's median nerve during her carpal tunnel release surgery. The primary question for the jury was whether or not Dr. Stutzman deviated from the standard of care in performing the surgery. Proof of the standard of care must be made through expert testimony. Bruni, *Page 8 
supra, at 131-132. Appellants presented the testimony of Dr. Nappi. Appellees presented the testimony of Dr. Stutzman and Arnold-Peter Weiss, M.D. ("Dr. Weiss").
 {¶ 15} Appellants argue that, while Dr. Nappi treated Mrs. Coulter and performed the surgery to repair the median nerve, because Dr. Weiss did not treat Mrs. Coulter and did not actually see the injury to her nerve, "he was incapable of rendering a credible opinion regarding the surgical care that Dr. Stutzman rendered in this case." (Brief of Appellants, at 7.) Appellants go on to argue, "[i]n light of these differences between the experts, the manifest weight of the evidence supported Plaintiffs' position that Dr. Stutzman was negligent * * *." Id. But appellants do not offer, and our research does not reveal, any authority for the proposition that a non-treating physician's expert testimony is, ipso facto, entitled to any less weight than that of a treating physician.
 {¶ 16} It is true that Dr. Nappi opined that Dr. Stutzman had deviated from the standard of care. It is also true that, if believed, Dr. Nappi's testimony is a proper basis for the jury to have found that Dr. Stutzman was negligent. However, "[i]t is axiomatic that the jury is the sole judge of the weight of the evidence and the credibility of witnesses." (Citation omitted.) Shriver v. Midkiff (Mar. 29, 1990), Franklin App. No. 89AP-596, 1990 Ohio App. LEXIS 1254, at *3.
 {¶ 17} When asked to identify the specific violation of the standard of care that Dr. Stutzman committed, Dr. Nappi explained, "[m]erely in that he managed to obtain a complete or near complete, 95 percent transection of [Mrs.] Coulter's median nerve. That is something that should not be able to occur if one is proceeding correctly with a carpal tunnel release." (Tr. Vol. I, at 131.) He went on to state, "[t]he nerve was transected, and therefore, apparently was not identified as such, is the only comment I can make." Id. at *Page 9 
132. Therefore, Dr. Nappi made it clear that his opinion that Dr. Stutzman had violated the standard of care was based solely on the fact that the median nerve was transected.
 {¶ 18} On cross-examination, Dr. Nappi testified that the median nerve lies directly beneath the transverse carpal ligament and can sometimes be adherent to the ligament. In fact, Dr. Nappi stated that he suspects that Mrs. Coulter's median nerve was adherent to the ligament. He conceded that a carpal tunnel release surgery is more difficult to perform when the nerve is adherent to the ligament. Dr. Nappi stated that in performing this particular surgery, the surgeon cuts, either with a scalpel or scissors, within a few millimeters of the median nerve, whether or not it is adherent to the ligament. He agreed that, because the area involved in the procedure is an area in which the anatomy may be variable, and structures are tightly packed together and under pressure, some nerve injury is possible. He further agreed that any carpal tunnel surgery may have significant complications.
 {¶ 19} Dr. Nappi testified that there are no risk-free carpal tunnel release surgeries, and there is "no foolproof technique" for a carpal tunnel release. Id. at 170. Dr. Nappi acknowledged that lacerations of the median nerve are a known risk of any carpal tunnel release surgery, and that there is a reported rate of median nerve injury in all carpal tunnel release techniques. Appellees' counsel then inquired, "And a known risk means it can happen without negligence, doesn't it?" Id. at 172. Dr. Nappi replied, "It could, yes." Id. Dr. Nappi stated that he always discusses with his patients the risk of injury to the median nerve. Dr. Nappi was asked whether he tells his patients "that * * * you can injure the median nerve even though you don't do anything wrong?" Id. at 171. He replied, "I think that would be correct." Id. Dr. Nappi went on to acknowledge that one *Page 10 
can perform the technique "completely appropriately" and still injure the median nerve, either partially or completely. Id. at 173. Dr. Nappi testified that he never guarantees his patients that he will not injure their median nerve.
 {¶ 20} On redirect examination, Dr. Nappi remained consistent in his assertion that complications can occur even when the surgeon exercises ordinary care. When appellants' counsel inquired whether "reasonable care * * * help[s] prevent any complications," Dr. Nappi replied, "[r]easonable care tends to minimize the likelihood of things occurring." Id. at 176. On recross-examination, he agreed that the exercise of reasonable care cannot completely eliminate the possibility of complications.
 {¶ 21} It is conceivable that the jury gave less weight to Dr. Nappi's testimony because he based his opinion as to Dr. Stutzman's negligence solely on the fact of the injury to the median nerve, and then testified that such an injury is an inherent risk of any carpal tunnel release surgery, and can occur even in the absence of negligence on the part of the surgeon. "The trier of fact is responsible for determining the credibility of a witness and may believe all, part or none of a witness' testimony, giving a witness little or no weight at all." Parsons v.Washington State Community College, Franklin App. No. 05AP-1138,2006-Ohio-2196, ¶ 21.
 {¶ 22} Moreover, Dr. Nappi's opinion as to the deviation from the standard of care was disputed by Dr. Stutzman and Dr. Weiss. Both testified that Dr. Stutzman met the standard of care and that Mrs. Coulter's injury occurred despite the exercise of requisite *Page 11 
standard of care. Dr. Weiss specifically disagreed with Dr. Nappi's premise that the "outcome equals the event" and that nerve transection, by definition, is a failure to perform at the standard of care. He testified that there was nothing that Dr. Stutzman could have done to avoid the outcome. Dr. Weiss explained the reason that median nerve injury cannot always be prevented:
 You can't see, it depends on your technique, but you can't really see the nerve before you cut the ligament. The ligament is like a bridge over the nerve and you can't look through the bridge to see the nerve before you actually cut the bridge. So there is no possible way — well, there is a possible way, you could make a huge incision, six inch incision, you could dissect way up here, find the nerve before it gets to the tunnel, but I don't think I could talk anybody into having that kind of surgery when normally you can do it through a half inch incision. So in a normal carpal tunnel incision you see the ligament first before you see anything else and you don't — can't see the nerve before you cut the ligament.
(Tr. Vol. IV, at 28-29.)
 {¶ 23} Dr. Weiss testified that transection of the median nerve is always a risk and "it could happen [to me] on my next time. I worry about it all the time because it is one of those procedures that's common so people tend to think nothing will ever go wrong * * *." Id. at 28. Dr. Weiss' testimony is competent, credible evidence supporting the jury's conclusion that Dr. Stutzman was not negligent. Dr. Nappi disagreed, but, again, we do not decide expert witnesses' credibility or how much weight to assign to experts' competing opinions.
 {¶ 24} Upon our thorough review of the record, we find that the jury's verdict is not
against the manifest weight of the evidence. Accordingly, we overrule appellants' second *Page 12 
assignment of error. Having overruled both of appellants' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE and BROWN, JJ., concur.
[1] We are aware that appellants have directed our attention to pages 114 to 117 of Volume III of the transcript, where it is noted that part of the discussion between the court and counsel regarding jury instructions would be off the record. However, we observe that there were other portions of the charge conference held on the record, and appellants had several opportunities to place on the record any objection to the remote cause instruction. Indeed, appellees did register several objections to the charge and the interrogatories. See, e.g., Tr. Vol. IV at 91-106. *Page 1