[Cite as *State v. Brown*, 2016-Ohio-7944.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

     Plaintiff-Appellee,                     :

                                                           No. 15AP-935
v.                                               :       (C.P.C. No. 14CR-2027)

Charles E. Brown,                                :       (REGULAR CALENDAR)

     Defendant-Appellant.                    :

D E C I S I O N

Rendered on November 29, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard*.

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Charles E. Brown, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of two counts of forgery, in violation of R.C. 2013.31, and sentencing him to one year of community control supervision. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant was charged with two counts of forgery, each a felony of the fifth degree, related to two checks made out to appellant that were drawn on the account of Angela Buergel. Buergel testified at trial that she hired a company to remodel her kitchen, including installation of new tile, beginning in July 2013. According to Buergel, while the work was underway, she discovered that two unauthorized checks had cleared her account

and that her checkbook was missing. She contacted police to report the theft of her checkbook. Buergel identified copies of the two unauthorized checks but testified she did not write or sign the checks. The state introduced copies of the checks, which were made out to appellant in the amount of $550 and $500, respectively, and contained the words "tile backsplash" on the memo line. (State's Exs. C & D.) Buergel stated that she was present while some of the remodeling work was completed, but she did not recognize anyone in the courtroom as having been in her home during the remodeling project.

{¶ 3} Chris Allan is the production manager for the company that performed the kitchen remodeling at the Buergel home. Allan testified that he managed the remodeling project and that he hired Nick Wilson as a subcontractor on that project. He recalled that Wilson employed another worker by the name of Chad. Allan did not recognize anyone in the courtroom as having worked on the Buergel kitchen remodeling project. Allan related that when using subcontractors his company receives payment from the customer and then the company pays the subcontractors. The customers do not pay the subcontractors directly.

{¶ 4} Columbus Police Detective Wyatt Wilson is a member of the Forgery Unit, and he testified that he investigated the theft of Buergel's checkbook. Detective Wilson determined the two checks drawn on Buergel's account were cashed at the same CheckSmart location on separate days. Detective Wilson obtained video of one of the checks being cashed which was introduced into evidence and played to the jury. Detective Wilson testified that both checks were payable to appellant and that each check contained appellant's indorsement and a social security number on the reverse side. According to Detective Wilson, appellant admitted to cashing the two checks at CheckSmart.

{¶ 5} At the close of the state's evidence, appellant's counsel made a motion under Crim.R. 29 for a directed verdict of acquittal, which the trial court denied. Appellant then testified on his own behalf. He admitted that he had previously been convicted of forgery, but he denied committing forgery in this case. Appellant testified he was working multiple jobs in July 2013, including working for Nick Wilson. Appellant recalled that on or about the date of the offense, Wilson left appellant working at one job site and went off to work at the Buergel's home. Appellant stated that as he was finishing his work for the day, he received a call from Wilson who asked if it would be okay if Buergel wrote a check

to appellant to pay Wilson for that day's work. Appellant explained that he did not find this to be unusual because Wilson had told appellant a few days earlier that he had lost his wallet and identification. According to appellant, Wilson picked him up from the job site, presented him with a check from Buergel that was made out to appellant, and they then went to CheckSmart where appellant had an account. While Wilson waited in the van, appellant took the check into CheckSmart and cashed it, using his signature, driver's license, and social security number. Appellant stated that he gave the proceeds of the check to Wilson and that Wilson paid him approximately $150 from the proceeds as compensation for appellant's work on a previous job. Appellant recalled that Wilson came to his house early the following morning with another check from Buergel made out to appellant and asked if appellant could cash it for him. He stated that Wilson drove him to CheckSmart where appellant cashed the check and gave the proceeds to Wilson. Appellant testified that CheckSmart contacted him a few weeks later to advise him the checks had been reported as stolen. Appellant claims that he tried to contact Wilson regarding the checks but was unable to reach him at that time or at any time since then. Appellant testified he was later pulled over by police and learned that he was wanted on a warrant connected to the checks. Appellant denied knowing that the checks were stolen when he cashed them.

{¶ 6} On cross-examination, the prosecutor asked appellant about his prior conviction:

> Q. You also have been convicted of a crime, haven't you?
>
> A. Yes.
>
> Q. All right. Forgery, right?
>
> A. Yes.
>
> Q. And in [sic] instance that check was also written out to you, wasn't it?
>
> MR. SCHUMANN: Objection. Your Honor, may we approach.

(Tr. Vol. II at 266.) The trial court held a brief discussion with counsel outside the presence of the jury before putting the jury on break and continuing the discussion.

During these discussions, appellant's counsel requested a mistrial, which the trial court denied. When the jury was reconvened, the trial court sustained the objection, struck the question from the record, and instructed the jury not to consider the prosecutor's question for any reason.

{¶ 7} The prosecutor then completed his cross-examination of appellant and each side presented closing arguments. The trial court's final jury instructions informed the jury that they could not consider statements or answers that were stricken by the court or that they were instructed to disregard. The trial court also instructed the jury that evidence regarding appellant's prior forgery conviction could not be considered to prove his character or that he acted in conformity with that character but only for testing his credibility and the weight to be given to his testimony. The jury found appellant guilty of both counts of forgery as charged in the indictment. Pursuant to the jury's verdicts, the trial court issued a judgment entry sentencing appellant to one year of community control under basic telephone reporting supervision.

{¶ 8} Appellant timely appealed to this court from the judgment of the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 9} Appellant assigns the following three assignments of error for our review:

> [1.] The trial court erred in denying the defendant-appellant's motion to declare a mistrial.
>
> [2.] The trial court err[ed] in denying the defendant-appellant's Crim.R. 29 motion for judgment of acquittal at the conclusion of the state's case.
>
> [3.] The jury's verdicts convicting the defendant-appellant of two counts of forgery were against the manifest weight of the evidence.

## III. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 10} In appellant's first assignment of error, appellant argues that the trial court abused its discretion when it denied his motion for a mistrial. Appellant claims that the prosecutor's query regarding the circumstances of his prior conviction unfairly prejudiced his defense and prevented him from receiving a fair trial. We disagree.

{¶ 11} "The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001), citing Crim.R. 33; *State v. Sage*, 31 Ohio St.3d 173, 182 (1987). "This standard is based upon the notion that the trial court is in the best position to determine whether the circumstances of the case necessitate the declaration of a mistrial or whether other corrective measures are adequate." *State v. Oteng*, 10th Dist. No. 14AP-466, 2015-Ohio-1231, ¶ 26, citing *State v. Bruce*, 10th Dist. No. 07AP-355, 2008-Ohio-4370, ¶ 75. A reviewing court may not substitute its judgment for that of the trial court absent an abuse of discretion. *Id.*

{¶ 12} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened." *State v. Reynolds*, 49 Ohio App.3d 27, 33 (2d Dist.1988). "The granting of a mistrial is necessary only when a fair trial is no longer possible." *Treesh* at 480, citing *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "To determine whether the defendant was deprived of a fair trial, we must determine whether, 'absent the improper remark[], the jury would have found the appellant guilty beyond a reasonable doubt.' " *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 52, quoting *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 42 (10th Dist.), citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984).

{¶ 13} Appellant objected to the prosecutor's question because appellant believed that it would elicit inadmissible character evidence in violation of Evid.R. 404(B). Under Evid.R. 404(B), evidence of other crimes "is not admissible to prove the character of a person in order to show action in conformity therewith," but may be admissible for other limited purposes, including demonstrating the "absence of mistake or accident." The state argued that appellant opened the door to such evidence by claiming in his direct examination that his prior conviction was the result of a mistake on his part. The trial court did not reach the merits of the parties' respective claims. Rather, the trial court sustained the objection because the state failed to provide appellant with notice of its intention to use "other acts evidence" as required by Evid.R. 404(B).[1] Although the state

---

[1] Evid.R. 404(B) provides, in relevant part, that "[i]n criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

asks us to revisit the trial court's ruling regarding admissibility, we do not need to reach the issue of admissibility in order to resolve appellant's first assignment of error. Even if we assume that the prosecutor's question was objectionable under Evid.R. 404, we find that the trial court cured any prejudice to appellant arising therefrom by taking prompt, corrective measures.

{¶ 14} In considering the extent of the prejudice to appellant arising from the prosecutor's question, we note that appellant admitted to the existence of his prior forgery conviction on direct examination. Evid.R. 609(A)(3) provides that when a defendant testifies, evidence that he has been convicted of a crime involving dishonesty or false statement is admissible for the purpose of attacking his credibility. Forgery is a crime of dishonesty; therefore, when appellant chose to testify, the fact of his prior conviction was admissible under Evid.R. 609(A)(3) for the purpose of attacking his credibility. *See, e.g.*, *State v. Rippy*, 10th Dist. No. 08AP-248, 2008-Ohio-6680, ¶ 24. When a prior conviction is introduced as evidence to impeach credibility, "[t]he general rule is that it is within the sound discretion of the trial court to limit cross-examination to the name, date and place of the conviction, and the punishment imposed." *State v. Amburgey*, 33 Ohio St.3d 115, 116 (1987). Details such as the victim's name and aggravating circumstances are not admissible. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 132.

{¶ 15} In this instance, the trial judge sustained defense counsel's objection before appellant answered, struck the prosecutor's question from the record, and immediately instructed the jurors to disregard the question. The substance of the trial court's curative instruction is as follows:

> I have sustained the objection from the defense and the fact that some issues were raised in the state's question is irrelevant and should not be considered for any purpose in deciding this case. And I'll have the question stricken from the record.

(Tr. Vol. II at 283-84.)

{¶ 16} At the close of all evidence, the trial court instructed the jury to disregard any question that was stricken from the record as follows:

> Statements or answers that were stricken by the Court or which you were instructed to disregard are not evidence and must be treated as though you have never heard them.
>
> You must not speculate as to why the Court sustained an objection to any question or what the answer to that question might have been. You must not draw an inference or speculate on the truth of any suggestion included in a question that was not answered.

(Tr. Vol. II at 325.)

{¶ 17} The trial court then proceeded to instruct the jury regarding the proper consideration of appellant's prior conviction as follows:

> Evidence was received that the defendant was convicted of forgery. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove that character of the defendant in order to show he acted in conformity with that character. If you find that the defendant was convicted of forgery, you may consider that evidence only for the purpose of testing the defendant's credibility and the weight to be given the defendant's testimony. It cannot be considered for any other purpose.

(Tr. Vol. II at 327.)

{¶ 18} As an appellate court, we must presume that the jury followed the trial court's instructions. *Walburg* at ¶ 53, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 39; *State v. Rowe*, 92 Ohio App.3d 652, 672-73 (10th Dist.1993), *jurisdictional motion overruled*, 69 Ohio St.3d 1403. When appellant renewed his motion for mistrial during post-trial proceedings, the trial court concluded that "there was no evidence that the jury disregarded the curative instruction or the jury instructions that were provided to them." (Tr. Vol. III at 360.) We agree with the trial court's conclusion.

{¶ 19} The circumstances in this case are similar to those presented to this court in *Walburg.* In that case, the defendant faced charges of complicity to possession of drugs. During redirect examination of the victim, the prosecution asked the victim the nature of defendant's business and she responded "he does illegal cable, illegal gas, illegal electric, illegal water, puts up cameras illegally, sells powder cocaine at the bar when he goes." *Id.*

at ¶ 50.  The trial court sustained defense counsel's objection and motion to strike but denied the request for a mistrial.

{¶ 20} On appeal from his conviction, Walburg argued that the trial court erred by refusing to declare a mistrial after the prosecutor elicited inadmissible evidence of other crimes or wrongs of the accused.  In rejecting that argument, this court found as follows:

> Before the trial began, the court instructed the jury that, if an objection were sustained, the jury was to "completely disregard the question and the answer" and "not to consider either for any purpose whatsoever." (Tr. 27.) The court reiterated its curative instruction immediately after it sustained the objection to the victim's testimony and in the jury instructions at the end of the trial.  The jury is presumed to have followed the trial court's instruction. Because the victim's reference to defendant's criminal occupations was an isolated reference, the trial court immediately sustained defendant's objection, and the court instructed the jury to disregard the question and response, the trial court did not abuse its discretion in denying defendant's motion for a mistrial. *State v. McCree*, 8th Dist. No. 87951, 2007 Ohio 268, ¶ 40 (determining the trial court did not err in overruling the defendant's motion for a mistrial because the witness's reference to the defendant's criminal history was an isolated reference, the trial court properly struck the testimony and the court advised the jury to disregard it); *State v. Woodward*, 10th Dist. No. 03AP-398, 2004 Ohio 4418, ¶ 35 (determining court's prompt remedial actions after prejudicial testimony prevented finding that the trial court abused its discretion in denying a motion for a mistrial).

(Internal citations omitted.)  *Id.* at ¶ 53.

{¶ 21} The facts of this case are similar to those in *Walburg*, and the same result is required.  Here, the trial court sustained defense counsel's objection to the improper question before appellant responded and then struck the question from the record.  The trial court followed up with a short authoritative instruction to the jury that they could not consider the prosecutor's question "for any purpose in deciding this case."  (Tr. Vol. II at 283.)  The trial court gave a similar instruction to the jury before the jury retired to render

its verdict.[2]  Curative instructions are presumed to be an effective way to remedy errors that occur during trial.  *Treesh* at 480.  The jury is presumed to follow any such instructions. *Id.*

{¶ 22} Likewise, in *State v. Garner*, 74 Ohio St.3d 49 (1995), defendant objected and moved for a mistrial when a police investigator testified that he had made arrests at the defendant's address in the past.  *Id.* at 59.  The trial court immediately sustained the defense objection to the testimony and instructed the jury not to consider it.   The Supreme Court of Ohio affirmed the trial court's denial of a mistrial because "the reference to the defendant's prior arrests was fleeting and was promptly followed by a curative instruction." *Id.*

{¶ 23} Finally, in *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, one of the state's witnesses sua sponte referred to the accused's prior conviction—a conviction which was not identified, nor admissible at trial.   The trial court sustained the accused's objection to the "isolated remark" and gave a curative instruction but denied a motion for mistrial.   *Id.* at ¶ 175.   The trial court did not strike the statement.   On review, the Supreme Court, relying on *Garner*, held that the trial court did not abuse its discretion by denying the accused's motion for mistrial and concluded that the trial court's corrective measures cured any unfair prejudice to Trimble arising from the evidence of his prior conviction.   In so holding, the court found that "[t]he mere mention of [the] conviction, without more, did not unfairly prejudice [the accused] so as to require a mistrial." *Trimble* at ¶ 175.

{¶ 24} Here, unlike in *Trimble*, appellant's prior conviction was itself admissible for the purpose of impeaching appellant's credibility.  Appellant acknowledged his prior conviction for forgery on direction examination.  The evidence of the conviction itself was admissible under Evid.R. 609(A)(3) because appellant took the stand in his own defense and because his prior conviction for forgery is a crime involving dishonesty.  *State v. Ewing*, 10th Dist. No. 06AP-243, 2006-Ohio-5523, ¶ 24, citing *State v. Brown*, 85 Ohio App.3d 716, 726 (3d Dist.1993); *State v. Johnson*, 10 Ohio App.3d 14, 16 (10th Dist.1983).  In our opinion, any prejudice to appellant arising from the prosecutor's single

---

[2] The trial transcript reveals that the trial court's preliminary instructions to the jury contained a similar admonition but that portion of the trial transcript is not part of the record on appeal.

unanswered question about the circumstances of appellant's prior conviction was not so great as to deny appellant the possibility of a fair trial and warrant a mistrial. Even assuming the prosecutor's unanswered question created the danger of unfair prejudice to appellant, the trial court cured any such prejudice when it sustained defense counsel's objection to the question, struck the question from the record, and immediately instructed the jury to disregard the query. The trial court's subsequent instructions again reminded the jury of its obligation to disregard the prosecutor's query. The dissent concludes that a mistrial was the only acceptable curative measure under the circumstances because the jury would not have found appellant guilty, beyond a reasonable doubt, had appellant's credibility not been damaged by the prosecutor's question. In our view, the record does not support that conclusion.

{¶ 25} On this record, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably when it elected to strike the prosecutor's question and provide a curative instruction rather than declaring a mistrial. Accordingly, we hold that the trial court did not abuse its discretion when it denied appellant's motion for a mistrial. Appellant's first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 26} In his second assignment of error, appellant contends that the trial court erred when it overruled his Crim.R. 29 motion for acquittal. We disagree.

{¶ 27} "Pursuant to Crim.R. 29(A), a court 'shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses.' " *State v. Jewett*, 10th Dist. No. 11AP-1028, 2013-Ohio-1246, ¶ 14. Because a Crim.R. 29 motion questions the sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds,* as recognized in *State v. Smith,* 80 Ohio St.3d 89, 102 (1997).

{¶ 28} Pursuant to R.C. 2913.31, the offense of "forgery" is defined, in relevant part, as follows:

> (A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
>
> (1) Forge any writing of another without the other person's authority;
>
> (2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed;
>
> (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

{¶ 29} "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). " 'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B). " 'Utter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H).

{¶ 30} "An actor's purpose or intent may be established by direct or circumstantial evidence." *State v. Smith,* 9th Dist. No. 26892, 2014-Ohio-3480, ¶ 19, citing *State v. Tiger,* 148 Ohio App.3d 61, 66 (9th Dist.2002). Similarly, circumstantial evidence is sufficient to allow a finding that the accused had the requisite knowledge under R.C.

2901.22(B).  *State v. Ortiz-Bajeca*, 12th Dist. No. CA2010-07-181, 2011-Ohio-3137, ¶ 20. Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind.  *Id.*

{¶ 31} Here, the state produced undisputed evidence that the two checks cashed by appellant were stolen from Buergel and that the indorsements were not genuine.  The state also produced undisputed evidence that appellant cashed one of the stolen checks, which was fraudulently made out to him in the amount of $550.  That check was cashed on the evening of July 18, 2013.  Appellant cashed the second stolen check, fraudulently made out to him in the amount of $500 on July 19, 2013.  That check was cashed in the morning.  The state also produced evidence that appellant, in an interview with police, admitted that he cashed the checks and kept some of the proceeds.  This evidence, if believed, permits a reasonable inference that appellant cashed the checks either with the purpose to defraud Buergel or knowing that he was facilitating a fraud on Buergel.  Thus, the evidence, if believed, is sufficient to establish appellant's guilt of forgery beyond a reasonable doubt.  *Ewing* at ¶ 35 (the state produced sufficient circumstantial evidence to show that the seller of an automobile knew the buyer's check was stolen where the check identified the account owner as living at a different address than the buyer and was inexplicably written for more than the agreed purchase price).

{¶ 32} Appellant argues that other evidence produced in the state's case-in-chief established that appellant never performed work at Buergel's home, and he was not familiar with her signature.  Appellant also relies on testimony from Detective Wilson who acknowledged that appellant provided an explanation for how he came into possession of the checks.  Appellant claims that such evidence forecloses a finding, beyond a reasonable doubt, that appellant knowingly cashed stolen checks or purposefully defrauded Buergel. We disagree.

{¶ 33} The fact that the state's evidence does not exclude the possibility that appellant cashed the checks without knowledge that they were stolen and fraudulently indorsed does not mean that the evidence is insufficient to support appellant's conviction of forgery beyond a reasonable doubt.  "When the state relies on circumstantial evidence to prove the essential elements of its case, there is no need for such evidence to be

irreconcilable with any reasonable theory of defense in order to support a conviction." *State v. Davis*, 10th Dist. No. 98AP-192 (Sept. 24, 1998), citing *Jenks*, *superseded by state constitutional amendment on other grounds*, as recognized in *Smith*, 80 Ohio St.3d 89 (1997). Moreover, in testing the sufficiency of the evidence, "[w]e construe all reasonable inferences in favor of the prosecution." *Davis*. Construing the evidence in the state's favor, we find that the record contains sufficient evidence to support appellant's conviction of forgery beyond a reasonable doubt. Accordingly, appellant's second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 34} In appellant's third assignment of error, appellant contends that his conviction is against the manifest weight of the evidence. The tests for sufficiency of the evidence and weight of the evidence are not the same. *Thompkins* at 386-87. Weight of the evidence concerns the effect of the evidence in inducing belief. *Oteng* at ¶ 67, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. It is the province of the factfinder to determine the truth from conflicting evidence, whether the conflicting evidence comes from different witnesses or is contained within the same witness's testimony. *State v. Eisenman*, 10th Dist. No. 10AP-809, 2011-Ohio-2810, ¶ 19. In order to reverse a verdict as being against the weight of the evidence, a unanimous reviewing court must determine that the jury clearly lost its way and created a manifest miscarriage of justice. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A verdict is reversed on these grounds only in exceptional circumstances. *Id.* The weight of the evidence, including the credibility of witnesses, is primarily an issue for the factfinder. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶ 35} As we previously determined, the state presented sufficient evidence to prove that appellant committed forgery beyond a reasonable doubt. As also noted above, appellant took the stand in this case and denied knowledge that the checks had been stolen and fraudulently indorsed. Thus, there is some evidence in the record that would support a finding that appellant innocently came into possession of the stolen checks and cashed them without knowledge that they were forged. Nevertheless, the factfinder is in the best position to observe the demeanor, voice inflection, and gestures of the witnesses as they testify. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58; *State v.*

*Clarke*, 10th Dist. No. 01AP-194 (Sept. 25, 2001). In determining witness credibility, the jury is entitled to consider the reasonableness of the testimony and all the facts and circumstances surrounding the testimony. *State v. Ealy*, 10th Dist. No. 15AP-600, 2016-Ohio-1185; *State v. Ferguson*, 11th Dist. No. 2007-A-0059, 2008-Ohio-2392. The jury in this case had the opportunity to observe appellant as he testified and to determine the reasonableness of his testimony in light of all the surrounding facts and circumstances, including admissible evidence that appellant had a prior conviction for forgery, a crime involving dishonesty. Appellant asked the jury to believe his unlikely explanation of Nick Wilson's possession of two separate checks made payable to appellant and drawn on the account of a person appellant did not know. On cross-examination, appellant could not explain how Wilson could have obtained the second check from Buergel that appellant cashed on the morning of July 19, 2013, when Wilson had not returned to Buergel's home or performed any additional work for Buergel after leaving her home on the previous evening. Detective Wilson testified that appellant's conduct in cashing the second check the morning after the first raised "red flag[s]." (Tr. Vol. II at 222.)

{¶ 36} The jury chose not to believe appellant's story. On this record, we cannot say that the jury clearly lost its way when it found appellant guilty of forgery in spite of his denials. Accordingly, appellant's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 37} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

HORTON, J., concurs.
DORRIAN, P.J., dissents.

DORRIAN, P.J., dissenting.

{¶ 38} I respectfully dissent and would sustain the first assignment of error.

{¶ 39} The state's case was based entirely on circumstantial evidence. There was no evidence linking appellant directly to the theft of the checks from the Buergel home. There was no dispute that the checks were made out to appellant and that he cashed them. Thus, the case turned on appellant's credibility and whether the jury believed

appellant's account of how he came into possession of the checks and why he cashed them.   Under these circumstances, the prosecutor's question, which posited that appellant's prior conviction also involved a check made out to him, just as in the present case, went beyond an attack on appellant's credibility. It appears to have been designed to suggest to the jury that appellant was guilty because the circumstances in this case mirrored those of his prior conviction.  This question was so prejudicial that it created the risk that the jury would not be able to make an independent determination of appellant's credibility.

{¶ 40} The prosecutor's question about the facts leading to appellant's prior conviction was highly prejudicial because appellant's credibility was the key issue to be determined by the jury.  The prosecution clearly relied on the prior conviction to discredit appellant's testimony, noting in closing argument that the jury could consider his prior conviction in determining his truthfulness.  The prosecutor also stated that, with respect to one part of appellant's story, "[b]esides the testimony of a convicted forger, we don't have any testimony or any other evidence" to support it.  (Tr. Vol. II at 318.)  Evid.R. 609(A)(3) expressly permits the use of a prior conviction to impeach a testifying defendant's credibility. However, courts have narrowly limited the details of a prior conviction that may be used for impeachment.  Under these circumstances, I believe the trial court's curative instruction, and the process leading to the issuance of the instruction, was insufficient to eliminate the prejudice created by the prosecutor's question, which suggested that the facts leading to appellant's prior conviction were the same as the facts in the present case.

{¶ 41} With respect to appellant's counsel agreeing to the trial court's proposed curative instruction, I note that in ineffective assistance of counsel claims involving curative instructions, courts have held that a competent attorney may reasonably choose not to request a limiting instruction in order to avoid further emphasizing a defendant's prior convictions.  *See, e.g., State v. Hester*, 10th Dist. No. 02AP-401, 2002-Ohio-6966, ¶ 15 ("Counsel may have declined to request a limiting instruction regarding appellant's prior convictions out of concern that, if such an instruction were given, the prior convictions would be once again called to the jury's attention."); *State v. Rawls*, 10th Dist. No. 03AP-41, 2004-Ohio-836, ¶ 42 ("[T]here could have been a tactical reason for his trial

counsel to not request an instruction on other acts evidence.  For example, trial counsel may have wanted to avoid drawing additional attention to the other acts testimony.").  Appellant's counsel was essentially in that scenario here and may not have requested a more specific curative instruction in order to avoid compounding the effect of the prejudicial information contained in the prosecutor's question.  Therefore, the fact that appellant's counsel agreed to the trial court's proposed curative instruction does not preclude a finding that a mistrial was warranted.

{¶ 42}  Under the circumstances presented in this case, where the state relied solely on circumstantial evidence and appellant's credibility was the primary issue to be determined by the jury, I would conclude that the prosecutor's question about the factual circumstances of appellant's prior conviction prejudiced appellant's right to a fair trial.  Although the trial court sustained appellant's objection to the question and instructed the jury to disregard it, the curative instruction was issued after an extended delay and was insufficient to reverse the prejudice arising from the prosecutor's question.  Therefore, I would find the trial court abused its discretion by denying appellant's motion for a mistrial.

_____