[Cite as *State v. Harmon*, 2020-Ohio-590.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 18AP-965 (C.P.C. No. 17CR-4910) |
| Tony L. Harmon, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 20, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Wolfe Law Group, LLC*, and *Stephen T. Wolfe*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Tony L. Harmon, appeals from the judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to jury verdicts finding him guilty of attempted murder, felonious assault, and kidnapping and a trial court judgment finding him guilty of the specifications associated with those charges. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} Harmon was indicted in September 2017 on charges of attempted murder, felonious assault, and kidnapping, with a repeat violent offender specification on each charge. The charges arose from an incident that occurred at Harmon's apartment on June 23, 2017, between Harmon and Lavandon A. Smith. A jury trial was conducted on the charges in September 2018.

{¶ 3}    At trial, Smith testified he knew Harmon through Harmon's brother, whom Smith had been friends with since childhood.  Smith would occasionally socialize with Harmon, hanging out, playing video games, and going to bars together.  A month or two prior to the incident, Smith loaned $400 to Harmon so he could pay rent.  On cross-examination, Smith denied selling drugs and denied giving Harmon drugs to sell as part of the loan.  Smith testified he loaned the money to Harmon on a Tuesday and expected to be repaid on Friday of the same week.  Smith stated that when the date for repayment arrived, Harmon told him he had gambled the money away at a casino in an attempt to double it.  Smith indicated he was sad that Harmon could not repay him on time but denied being upset with Harmon or arguing with him.

{¶ 4}    Smith testified Harmon texted him on June 23, 2017, indicating he should come over to Harmon's apartment so Harmon could repay the loan.  Harmon let Smith into the apartment and shut the door, then indicated he was getting his wallet and went to a coffee table in the living room.  Smith testified he was looking at his phone and not paying attention when Harmon suddenly struck him in the abdomen.  After Harmon struck him again, Smith realized Harmon was stabbing him.  Harmon stabbed Smith multiple times in the shoulder, hands and arms, abdomen, and chest.  Smith was standing near the door to the apartment when this occurred; he opened the door and tried to flee.  Smith testified that when he was halfway out the door, Harmon put his body against the door and grabbed Smith's arm, trapping Smith's left side in the apartment and preventing him from leaving.  Smith was ultimately able to force his way out of the apartment.  Smith testified he dropped his phone in the apartment and lost his left shoe in the struggle.  He fled the apartment and met a maintenance worker for the apartment complex, who helped him to the complex rental office.  The maintenance worker and the office manager locked the doors to the rental office and called police.  Smith claimed that while waiting for police to arrive, he saw Harmon drive away from the apartment complex.

{¶ 5}    Smith testified he held a concealed-carry weapon permit and carried a gun in his waistband most of the time for protection.  However, Smith stated he was not carrying his gun when he entered Harmon's apartment on June 23, 2017, asserting he did not feel the need to carry it and left it in his vehicle because he considered Harmon family.  Smith

claimed he did not threaten Harmon prior to the stabbing. Smith testified his injuries required major surgery, including removal of a portion of his colon.

{¶ 6} The maintenance worker who helped Smith to the apartment complex office and the apartment complex office manager both testified about the assistance they provided to Smith. Both testified they did not see any weapons on Smith while they were aiding him. Columbus Police Officer Adam Callender, who responded to the emergency call along with his partner, testified that Smith and the manager of the apartment complex met them near the leasing office. Smith had wounds to his hands and abdomen. Officer Callender testified he did not see any weapons on Smith. After Smith was transported for medical treatment, Officer Callender and his partner went to Harmon's apartment; no one was present and they secured the scene. Columbus Police Detective Lisa Swisher from the crime scene search unit testified that a box cutter was recovered from Harmon's apartment. Smith's left sandal was also located in Harmon's apartment. At the close of the prosecution's presentation, Harmon's trial counsel moved for acquittal under Crim.R. 29. The trial court denied the motion.

{¶ 7} Harmon then testified on his own behalf. He stated he was friends with Smith, whom he knew through his brother. Harmon testified he and Smith lived in the same apartment complex and he had spent time at Smith's apartment. Harmon claimed he had seen Smith with a handgun and was aware Smith usually carried a handgun. Harmon also testified he had purchased marijuana from Smith on multiple occasions.

{¶ 8} Harmon stated that, approximately one month before the incident, Smith loaned him $200 in cash and gave him an ounce of marijuana to sell. Harmon stated Smith instructed him to sell the marijuana for $320 and give $200 of that profit back to Smith. Thus, Smith indicated Harmon owed him a total of $400. Harmon stated the loan was made on a Monday or Tuesday, and he was expected to repay Smith at the end of that week; however, Harmon admitted he was unable to repay Smith when expected because he had gambled away the money at a casino. Harmon testified that when he told Smith he would be unable to repay him on time, Smith became upset and told him a story about having previously been in a shootout with someone else who owed him money. Harmon stated he did not perceive this story to be a threat at the time, but later came to believe it was a threat. Harmon told Smith he would repay him within a few weeks.

{¶ 9}  Harmon testified he texted Smith on June 23, 2017 to indicate he needed to speak with him. Smith did not reply to the text but arrived at Harmon's apartment approximately three hours later.  Harmon testified he was surprised when Smith arrived because he had not responded to the text message.  Harmon testified he was smoking marijuana and playing a video game when Smith arrived at his apartment. Harmon was wearing a hooded sweatshirt with a large front pocket, where his marijuana supplies, including a small knife, were located.

{¶ 10}  After Smith entered the apartment, Harmon went to the coffee table to pause the video game.  Harmon testified he told Smith he could not repay him because he had lost the money again.  Harmon testified Smith became angry and began yelling, telling Harmon to get the money from relatives if necessary.  Harmon testified that Smith reached toward a bulge at his waist, which Harmon believed was Smith's gun. Harmon stated he feared that Smith would shoot him.  However, Harmon admitted he did not actually see a gun. Harmon testified that when Smith reached toward his waist, he rushed at him and grabbed him. Harmon pulled the knife out of his sweatshirt pocket and began swinging it at Smith. Harmon said he saw Smith opening the door, so he pushed Smith out of the apartment and locked the door.  Harmon claimed he believed he was acting in self-defense.  After Smith left the apartment, Harmon initially hid in the bathroom of the apartment in fear that Smith would shoot through the door.  When several minutes passed without Smith returning, Harmon left the apartment and drove away from the complex in his car.

{¶ 11}  The jury found Harmon guilty of all charges and the trial court found him guilty of the repeat violent offender specifications associated with each charge.  The trial court found the attempted murder and felonious assault convictions merged for purposes of sentencing, but the kidnapping conviction did not merge.  The court sentenced Harmon to a total of 16 years imprisonment on all charges and specifications.

## II. Assignments of Error

{¶ 12}  Harmon appeals and assigns the following four assignments of error for our review:

> [I.] The trial court committed plain error when it did not sua sponte declare a mistrial after a witness repeatedly mentioned Appellant's criminal record.

[II.] Trial counsel was ineffective for not moving for a mistrial or requesting a curative instruction after a witness repeatedly mentioned Appellant's criminal record.

[III.] The verdicts were not supported by sufficient evidence and Appellant's Crim.R. 29 Motion should have been granted.

[IV.] The jury's verdicts were against the manifest weight of the evidence.

## III. Analysis

## A. Alleged Errors Resulting from References to Harmon's Prior Criminal Record

{¶ 13} Harmon's first two assignments of error relate to statements Smith made about Harmon's prior criminal record. On direct examination at trial, Smith provided the following description of his relationship with Harmon:

Q: Can you describe your relationship with Mr. Harmon a little bit more in depth?

A: Yeah. Well, basically, he has a brother, his name is Eric. Me and him grew up together since we were five. He plays basketball, as well. Basically my mom getting in a relationship with his uncle made us family. Me and Eric was best friends 20 years, until this incident, basically at this point.

He was in prison my whole time throughout our friendship, and I would be over at Eric's house, playing video games, things of that nature. He'll get a call from jail to talk to his brother, or I might not come over on a certain weekend - - I'm there every weekend - - because he had to go for a visit to see his brother in prison. So I always knew his brother was in prison. So we never had a relationship to that extent.

Recently, when he got out of prison, of course, when you come home you want to be able to enjoy your life. Of course, we're guys, we want to go to the bar, hang out, things of that nature.

(Sept. 26, 2018 Tr. at 87-88.) Harmon's trial counsel objected to Smith's testimony. The trial court then held a conference with counsel outside the hearing of the jury. Harmon's trial counsel moved to strike any references to prison. The prosecutor did not object to the motion. The judge noted that instructing the jury that any reference to prison would be

stricken might serve to emphasize the reference to Harmon's time in prison and suggested the entire answer be stricken; Harmon's trial counsel agreed with the suggestion. When the conference ended, the trial court instructed the jury to disregard Smith's entire response.

{¶ 14} Smith made a second reference to Harmon's criminal record in response to a question on cross-examination:

> Q: Now, at the time you - - when did you first meet Mr. Harmon?
>
> A: It would be when he first got out of prison. I would say - -

(Sept. 26, 2018 Tr. at 142.) At that point, the prosecutor objected and the trial court struck Smith's response to the question.

{¶ 15} Harmon subsequently testified on his own behalf; during direct examination Harmon stated he pled guilty to charges of attempted involuntary manslaughter and attempted aggravated robbery when he was younger. No further references to Harmon's criminal record were made during trial.

## 1. **Failure of trial court to declare a mistrial**

{¶ 16} Harmon argues in his first assignment of error the trial court erred by failing to declare a mistrial based on Smith's references to his criminal history. Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Harmon asserts that Smith's references to his criminal record warranted a mistrial because they suggested he was a career criminal who had been to prison multiple times and was capable of unprovoked violence. Harmon further argues Smith's statements forced him to testify in an attempt to explain his prior criminal record and effectively denied him the right not to testify. Harmon's trial counsel objected to Smith's statement during direct examination but did not move for a mistrial. Harmon argues the trial court erred by failing to sua sponte declare a mistrial in response to Smith's testimony.

{¶ 17} We review a trial court's failure to grant a mistrial sua sponte under the plain error standard. *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 13. Plain error exists when an error is plain or obvious and affects a substantial right. *Id.* "In order to demonstrate plain error, the defendant must show: (1) an error that is plain on the record,

i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings; and (2) that such error affected substantial rights, i.e., there was a reasonable probability that the error affected the outcome of the trial." *State v. Barrie*, 10th Dist. No. 15AP-848, 2016-Ohio-5640, ¶ 32. Appellate courts find plain error with the utmost caution, under exceptional circumstances to prevent a manifest miscarriage of justice. *Id.*

{¶ 18} "A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties." *Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when the ends of public justice would otherwise be defeated." *State v. Johnson*, 10th Dist. No. 08AP-652, 2009-Ohio-3383, ¶ 30.

{¶ 19} The Supreme Court of Ohio has held that a trial court does not abuse its discretion by denying a motion for mistrial based on an isolated reference to a defendant's other criminal acts, when there is an objection to the statement and a curative instruction is given. *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 175 ("In this case * * * the reference to Trimble's prior conviction was a brief and isolated remark that was followed by a curative instruction. The mere mention of Trimble's conviction, without more, did not unfairly prejudice Trimble so as to require a mistrial."); *State v. Garner*, 74 Ohio St.3d 49, 59 (1995) ("In this case, the reference to the defendant's prior arrests was fleeting and was promptly followed by a curative instruction. The trial court did not abuse its discretion in failing to order a mistrial."). This court has similarly found no abuse of discretion in denial of a motion for mistrial when an isolated reference to a defendant's other criminal acts draws an objection that is sustained and followed by a curative instruction. *See State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 21 ("[T]he trial court sustained defense counsel's objection to the improper question [about the circumstances of a prior conviction] before appellant responded and then struck the question from the record. The trial court followed up with a short authoritative instruction to the jury that they could not consider the prosecutor's question 'for any purpose in deciding this case.' "); *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 53

("Because the victim's reference to defendant's criminal occupations was an isolated reference, the trial court immediately sustained defendant's objection, and the court instructed the jury to disregard the question and response, the trial court did not abuse its discretion in denying defendant's motion for a mistrial."). In *Walburg* and *Brown*, this court noted that a jury is presumed to follow a trial court's curative instructions. *Walburg* at ¶ 53; *Brown* at ¶ 21. Thus, where a brief reference to a defendant's other criminal acts is immediately addressed through an objection and curative instruction, a trial court does not abuse its discretion by concluding a mistrial is not warranted.

{¶ 20} Although Harmon's trial counsel did not move for a mistrial, we find this case to be similar to *Trimble*, *Garner*, *Walburg*, and *Brown*. As in those cases, the references to Harmon's criminal history were brief and were immediately addressed through objections from counsel and curative instructions from the trial court. The jury was presumed to follow those curative instructions. Under these circumstances, the brief references to Harmon's criminal record did not prevent him from having a fair trial, and the trial court did not plainly err by failing to sua sponte grant a mistrial in response to Smith's statements.

{¶ 21} Accordingly, we overrule Harmon's first assignment of error.

## 2. **Failure of trial counsel to move for mistrial or request curative instruction**

{¶ 22} In his second assignment of error Harmon asserts his trial counsel provided ineffective assistance by failing to move for a mistrial or request a curative instruction in response to Smith's references to Harmon's criminal record.

{¶ 23} Harmon must satisfy a two-prong test to prevail on a claim of ineffective assistance of counsel. First, he must demonstrate that his trial counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). Second, he must establish that the deficient performance prejudiced his defense. *Strickland* at 687; *Bradley* at 141-42. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus. In considering claims of ineffective assistance of counsel, we indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Strickland* at 689; *Bradley* at 142. "Decisions on trial strategy and tactics are generally afforded a wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 86.

{¶ 24} Harmon argues his trial counsel's failure to request a curative instruction in response to Smith's testimony cannot be considered trial strategy. The record reflects that both times Smith referred to Harmon's criminal record there was an objection to the testimony and the trial court specifically instructed the jury to disregard the statements. Additionally, when counsel and the trial court discussed the final jury instructions to be given at the close of trial, the prosecutor noted that Harmon's criminal record had been mentioned during Smith's direct testimony and suggested Harmon's trial counsel might want a curative instruction. Harmon's trial counsel declined this suggestion and the trial court noted the jury had been instructed to disregard the testimony at the time of the original objections. Harmon appears to argue his trial counsel provided ineffective assistance by failing to request curative instructions that went beyond telling the jury to disregard the statements.

{¶ 25} Although Smith's references to Harmon's criminal record were inadmissible, the jury ultimately became aware of Harmon's record through his own testimony. Under Evid.R. 609(A)(2), evidence that an accused has been convicted of a crime is admissible for purposes of attacking his credibility if the crime was punishable by death or more than one year of imprisonment if the court finds that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury. While Harmon argues he was effectively forced to testify because of Smith's references to his prior criminal record, it is clear from the opening statement of Harmon's trial counsel that self-defense would form the crux of Harmon's defense against the charges. Because Harmon and Smith were the only two witnesses to the altercation, Harmon's testimony was necessary to establish his claim of self-defense. In the final jury instructions, the trial court reiterated its prior instruction that the jury was not permitted to consider statements stricken by the court. The court also instructed the jury that testimony related to Harmon's prior convictions could only be considered to judge his credibility and the weight to be given to his testimony.

{¶ 26} Because the fact that Harmon had a criminal record would ultimately become known to the jury, Harmon's trial counsel could have reasonably concluded that a more specific curative instruction that went beyond telling the jury to disregard Smith's statements would only serve to draw further attention to Harmon's criminal record. *See, e.g., State v. Crowley*, 2d Dist. No. 2009 CA 65, 2009-Ohio-6689, at ¶ 15 ("Crowley's counsel properly objected to Hopping's testimony regarding Crowley's history of domestic violence against her. Although he did not request a limiting instruction when that testimony was introduced, as discussed above, counsel could have reasonably concluded that a limiting instruction would merely emphasize the prejudicial testimony. Counsel's conduct with respect to Crowley's 'other acts' was not ineffective."). Applying the appropriate standard of broad latitude for determining what constitutes professional judgment, we cannot conclude Harmon's trial counsel performed deficiently by failing to request a more specific curative instruction.

{¶ 27} Harmon also argues his trial counsel was ineffective for failing to move for a mistrial following Smith's comments. As explained above, we presume the jurors were able to follow the trial court's instructions to disregard Smith's statements. Those instructions effectively cured any error arising from Smith's statements in the context of ineffective assistance. *State v. Sullivan*, 10th Dist. No. 10AP-997, 2011-Ohio-6384, ¶ 82. As such, a motion for mistrial by Harmon's counsel would have been futile because the trial court had cured the error and would not have been required to grant the motion. *Id.* Failure to take a futile act cannot form the basis for a claim of ineffective assistance of counsel, nor can such a failure be prejudicial. *Id.* Therefore, we cannot conclude Harmon's trial counsel performed deficiently by failing to move for a mistrial in response to Smith's testimony.

{¶ 28} Accordingly, we overrule Harmon's second assignment of error.

**B. Sufficiency of the Evidence**

{¶ 29} Harmon argues in his third assignment of error that the verdicts were not supported by sufficient evidence and that the trial court erred by denying his Crim.R. 29 motion for acquittal. Because Harmon only challenges the sufficiency of the evidence to support his conviction on the charge of kidnapping, we limit our review to the evidence supporting that charge.

{¶ 30} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id*. "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction." *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18. Because a Crim.R. 29 motion questions the sufficiency of the evidence, we apply the same standard of review on appeal of a denial of a Crim.R. 29 motion as in a challenge to the sufficiency of the evidence. *State v. Kearns*, 10th Dist. No. 15AP-244, 2016-Ohio-5941, ¶ 44.

{¶ 31} Harmon was charged with kidnapping, in violation of R.C. 2905.01(A)(3), which provides that an individual may not restrain the liberty of another person by force, threat, or deception for the purpose of terrorizing or inflicting serious physical harm upon them. Harmon argues Smith testified he locked the door upon entering Harmon's apartment and, therefore, Smith's inability to leave the apartment was the result of his own action. Smith's testimony on whether he locked the apartment door was unclear. During his direct testimony, Smith stated he locked the door after entering Harmon's apartment. Later, on cross-examination, Smith testified he was not certain who locked the door but admitted it was his instinct to lock a door behind him upon entering a home.

{¶ 32} Regardless of whether Smith locked the door upon entering the apartment, there was other evidence that Harmon prevented Smith from leaving the apartment. Smith testified he tried to flee after Harmon began stabbing him, but when he was partially out of the apartment Harmon put his body against the apartment door and pulled Smith's arm, preventing him from getting his left side out of the door. There was also evidence that Smith's left sandal was found inside the apartment, which was consistent with his account of the struggle. Taking this evidence in the light most favorable to the prosecution, it would

be sufficient to sustain a kidnapping conviction because it established that Harmon prevented Smith from leaving the apartment so that he could continue his assault. *See, e.g., Griffin* at ¶ 87 (holding testimony that appellant positioned himself between victim and vehicle door, thereby preventing victim from leaving vehicle, was sufficient to sustain a kidnapping conviction); *State v. Powell*, 8th Dist. No. 99386, 2014-Ohio-2048, ¶ 16 ("The kidnapping count relating to Tate was proved by more than sufficient evidence. As all of the others were leaving the house in the wake of Brown's killing, Powell was seen putting his arm out to prevent Tate from leaving the house. That act alone constituted a restraint for purposes of the kidnapping statute.").

{¶ 33} Accordingly, we overrule Harmon's third assignment of error.

## C. Manifest Weight of the Evidence

{¶ 34} Finally, in his fourth assignment of error, Harmon asserts the jury's verdicts were against the manifest weight of the evidence.

{¶ 35} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 282, 2007-Ohio-2202, ¶ 25. When evaluating a challenge to a verdict as being against the manifest weight of the evidence, "an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387. In conducting our review of the evidence, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the " 'exceptional

case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 36} Harmon argues the jury's verdicts were against the manifest weight of the evidence because he established he acted in self-defense. Under the law at the relevant time, self-defense is an affirmative defense that requires an accused to prove by a preponderance of the evidence that: (1) he was not at fault in creating the situation that gave rise to the altercation, (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape was the use of force, and (3) he did not violate any duty to retreat or avoid the danger. *State v. Reynolds*, 10th Dist. No. 18AP-560, 2019-Ohio-2343, ¶ 34. These elements are cumulative and if an accused fails to prove any one of the elements by a preponderance of the evidence, he fails to demonstrate that he acted in self-defense. *Id.* Harmon argues his testimony established all of these elements by a preponderance of the evidence and the jury lost its way in finding him guilty of the charges against him.

{¶ 37} With respect to the third element of self-defense, the evidence was undisputed that the altercation occurred in Harmon's apartment. There is no duty to retreat from one's own home before using force in self-defense. *State v. Shine-Johnson*, 10th Dist. No. 17AP-194, 2018-Ohio-3347, ¶ 11. However, with respect to the other two elements of self-defense, we conclude the jury could reasonably have concluded Harmon failed to establish he was not at fault in creating the situation or had a bona fide belief that he was in imminent danger of death or great bodily harm and could only escape through use of force. Harmon argues he was not at fault for creating the situation giving rise to the altercation, asserting that Smith's history of carrying a handgun and making threatening statements led to the altercation. However, Smith denied threatening Harmon and testified Harmon attacked him shortly after he entered the apartment, while Smith was looking down at his phone. Likewise, although Harmon argues he legitimately believed Smith was carrying a gun and charged Smith as he was reaching for it, he admitted at trial that he did not actually see a gun on Smith at the time of the incident. Smith testified he was not carrying his gun when he entered Harmon's apartment on June 23, 2017. The two apartment complex employees who aided Smith after the incident and Officer Callender who responded to the emergency call all testified they did not see any weapons on Smith.

The jury was in the best position to determine the credibility of Harmon, Smith, and the other witnesses, and was free to believe or disbelieve any or all of the testimony relating to these issues. *Reynolds* at ¶ 36. Based on the record before us, we cannot conclude the jury clearly lost its way in rejecting Harmon's self-defense claim and concluding he was guilty of the charges against him.

{¶ 38} Accordingly, we overrule Harmon's fourth assignment of error.

**IV. Conclusion**

{¶ 39} For the foregoing reasons, we overrule Harmon's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER and NELSON, JJ., concur.