[Cite as *State v. Ndiaye*, 2020-Ohio-1008.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio, :

      Plaintiff-Appellee, :      No. 19AP-10
                                  (M.C. No. 2017 TRC 189889)

v. :

                                             (REGULAR CALENDAR)

Boubacar Ndiaye, :

      Defendant-Appellant. :

---

D E C I S I O N

Rendered on March 17, 2020

---

**On brief:** *Zachary M. Klein,* City Attorney, *Bill R. Hedrick,* and *Orly Ahroni*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce.*

---

APPEAL from the Franklin County Municipal Court

KLATT, J.

{¶ 1} Defendant-appellant, Boubacar Ndiaye, appeals from a judgment of the Franklin County Municipal Court finding him guilty, following a bench trial, of two counts of operating a vehicle while under the influence of alcohol ("OVI") and one count of driving outside marked lanes. For the following reasons, we affirm.

{¶ 2} On November 5, 2017, appellant was charged with one count of OVI in violation of R.C. 4511.19(A)(1)(a), one count of OVI test refusal with prior conviction in violation of R.C. 4511.19(A)(2), one count of failure to wear a safety belt in violation of R.C. 4513.263(B)(1), and one count of driving outside marked lanes in violation of R.C. 4511.33. Appellant initially entered a not guilty plea and demanded a jury trial.

{¶ 3} Appellant filed a motion to suppress the evidence obtained from the warrantless seizure of appellant.  Plaintiff-appellee, State of Ohio, filed a memorandum contra appellant's motion to suppress, and the trial court set the matter for hearing.  Following the hearing, the trial court denied the motion to suppress and scheduled the matter for trial.

{¶ 4} At the commencement of trial, appellant waived his right to a jury and elected to be tried by the court.  The state presented the testimony of Ohio State Highway Patrol Trooper Kyle Compton, along with video from the cruiser dashboard camera which documented the traffic stop.  (State's Ex. A.)  Compton testified that on November 5, 2017, he was on patrol in the area of Long Street and Cleveland Avenue in a marked cruiser. At approximately 2:04 a.m., he observed appellant's vehicle weaving within its lane of travel.  Compton navigated his cruiser behind appellant and followed him for several blocks eastbound on Long Street.  Compton observed appellant's vehicle cross over the marked lane, approximately one-half car width, into the adjacent lane.  After appellant turned left onto Cleveland Avenue, Compton activated his overhead lights and initiated a traffic stop.  Appellant immediately pulled over to the right lane, stopping approximately four feet from the curb.

{¶ 5} Compton approached appellant's vehicle, noted that he was the only occupant, and observed that appellant was not wearing his safety belt.  Compton explained that he had initiated the traffic stop based upon a marked lanes violation and requested that appellant provide his driver's license, vehicle registration, and proof of insurance.  Appellant retrieved some papers from the glove compartment, placed them on his lap, and began thumbing through them.  Appellant passed his vehicle registration multiple times as he looked though the papers, even though Compton twice advised him that he had passed the vehicle registration.  Compton detected the odor of alcohol emanating from inside the vehicle and observed that appellant's eyes were glassy and bloodshot.

{¶ 6} Compton told appellant to place the papers on the passenger seat and turn off the ignition.  Because appellant did not immediately comply, Compton had to repeat these instructions.   After appellant turned off the ignition, Compton ordered him to exit the vehicle.   Once appellant was outside the vehicle, Compton smelled alcohol on appellant's breath and again observed that his eyes were glassy and bloodshot.  Compton

then conducted several field sobriety tests: horizontal gaze nystagmus ("HGN"); vertical gaze nystagmus ("VGN")[1]; walk-and-turn; one-leg-stand; lack of convergence; and alphabet. Appellant exhibited six of six clues on the HGN, no clues on the VGN, five of eight clues on the walk-and-turn, and four of four clues on the one-leg-stand. He also exhibited a lack of convergence in his right eye and failed to properly recite the alphabet in accordance with Compton's instructions. Based upon the results of the field sobriety tests and his observations, Compton arrested appellant and placed him in the back of his cruiser.

{¶ 7} The cruiser video established that while appellant was seated in the cruiser, Compton learned (presumably through a LEADS check) that appellant had been convicted of OVI within the past 20 years. Accordingly, Compton determined that appellant's vehicle had to be towed. While waiting for a tow truck, Compton asked appellant if he wanted to voluntarily submit to a "PBT." (State's Ex. A.) When appellant averred that he did not understand the meaning of "PBT," Compton explained that it was a portable breath test. Appellant indicated that he was not refusing to submit to the PBT, but wanted to speak to his attorney first. Compton asked appellant for the attorney's telephone number. Appellant stated that he did not know the number because it was saved in his cell phone; he then noted that Compton had confiscated his phone. Compton said it was "no big deal" and thereafter did not further pursue the voluntary PBT. (State's Ex. A.) Compton then asked appellant if he was going to submit to, or refuse, a urine test. Compton read BMV Form 2255[2] to appellant regarding the consequences of taking or refusing a chemical test. Appellant reiterated that he wanted to speak to his attorney before deciding how to proceed.

{¶ 8} After appellant's vehicle was towed, Compton transported appellant to the police station, where he asked appellant "multiple times" if he was going to submit to a urine test. (Oct. 30, 2018 Tr. at 43.) Appellant again stated that he wished to speak to his attorney. Compton permitted appellant the opportunity to do so. After appellant failed to reach his attorney, Compton again requested that appellant submit to a urine test. Appellant refused. At trial, Compton was permitted to refresh his recollection with BMV

---

[1] A VGN test detects the presence of drugs of influence in a person's body. *State v. Cook,* 5th Dist. No. 06-CA-20, 2007-Ohio-707, ¶ 5, fn. 2.

[2] BMV Form 2255 is entitled "Report of Law Enforcement Officer Administrative License Suspension/Notice of Possible CDL Disqualification/Immobilization/Forfeiture."

Form 2255, in which Compton documented appellant's refusal to submit to a urine test. The form includes appellant's signature with the caveat, "I did not refuse to take the test." (BMV Form 2255.)

{¶ 9} After he refused to submit to a urine test, appellant asked Compton if he could use the restroom; Compton permitted him to do so. When appellant emerged from the restroom, he said, "I thought I was going to take a test." (Tr. at 46.) Compton believed that appellant's "hemming and hawing around whether he was going to take [the urine test]," coupled with his statement after using the restroom, demonstrated that "it was pretty much a big game" to appellant. (Tr. at 46.)

{¶ 10} On cross-examination, Compton conceded that during the traffic stop, appellant did not slur his speech, did not admit to consuming alcohol, and did not stumble while exiting his vehicle. He further testified that appellant mentioned a knee injury which, Compton conceded, could affect coordination tests such as the walk-and-turn and one-leg-stand. Compton further testified, however, that appellant "seemed to be walking fine and any injuries didn't seem to be a factor whatsoever." (Tr. at 52.) Compton also conceded that field sobriety tests are not 100 percent accurate and that glassy and bloodshot eyes could result from factors other than alcohol consumption, such as allergies or late night tiredness.

{¶ 11} Compton further testified that he asked appellant to submit to a urine test, but did not request that he submit to a breath test at the police station. Compton explained, "I figured there could possibly be drugs and alcohol, so I don't just do a breath test." (Tr. at 54.) He averred, however, that he had access to a breathalyzer at the police station.

{¶ 12} Following Compton's testimony, the parties stipulated that appellant had been convicted of OVI in December 2015. At the close of the state's case-in-chief, appellant moved for judgment of acquittal pursuant to Crim.R. 29(A). The trial court denied the motion without explanation.

{¶ 13} Appellant testified in his own defense. He averred that he is 35 years old and was born in Senegal; French is his native language. He moved to the United States in 2006. Although he studied English while in high school in Senegal, he "learned the grammar but not speaking." (Tr. at 59.)

{¶ 14} At the time of the arrest, appellant was employed in the housekeeping department at Mount Carmel Hospital. He left work at 11:00 p.m. after working a 12-hour shift. He went home for a while, but later drove to a club, arriving at approximately 1:00 a.m. He did not consume any alcohol either at home or at the club. He explained that following his 2015 OVI conviction, he no longer drinks and drives. After socializing and dancing with people at the club, he left just before 2:00 a.m.

{¶ 15} Appellant was driving home when Compton stopped him. According to appellant, he was wearing his safety belt but released it once he was instructed to exit his vehicle. Because English is not his first language, he had a "little bit" of difficulty understanding Compton's instructions. (Tr. at 67.) He also felt "a little nervous" during his encounter with Compton, which affected his ability to perform well on the field sobriety tests. (Tr. at 68.) He suffered a knee injury when he was a teenager which still causes pain when he is on his feet for an extended period of time. He declined to take the portable breathalyzer test only because he wanted to speak to his attorney (with whom he was working to gain U.S. citizenship) before submitting to it; however, he was unable to contact his attorney due to the lateness of the hour. He was unsure why he smelled of alcohol. He theorized that it was the cologne he wore or that someone at the club may have spilled alcohol on him, although he could not remember anyone doing so and his clothing was not wet.

{¶ 16} Regarding the urine test, appellant averred that when he arrived at the police station, he asked to use the restroom because he had been sitting in the police cruiser for two hours. At this point, Compton had not requested that he submit to a urine test, and appellant had no idea that he would be asked to provide a urine sample. Upon exiting the restroom, appellant asked Compton "what are we going to do?" (Tr. at 70). He then told Compton, "we can take the test." (Tr. at 74.) According to appellant, the "test" to which he referred was a breathalyzer test. (Tr. at 73.) Compton then replied, "[y]ou denied the urine test." (Tr. at 70.) Appellant responded, "I didn't deny anything. I'm asking you because I'm trying to cooperate with you. You tell me what you want me to do." (Tr. at 70.) Compton replied, "[n]o, you just refused to do it, call somebody to come pick you up." (Tr. at 70-71.) Appellant acknowledged that Compton read him BMV Form 2255, which indicated that appellant refused to submit to a urine test at 4:05 a.m. Appellant further

acknowledged that he signed the form; however, he emphasized that he also stated that he did not refuse to take the test.

{¶ 17} On rebuttal, Compton testified that "to my recollection," the only chemical test he offered appellant was a urine screen. (Tr. at 101.) Following this answer, the prosecution played the portion of the cruiser video wherein Compton offered appellant a urine screen. The trial court asked defense counsel, "[a]re you in agreement? Did you hear urine sample?" (Tr. at 102.) Defense counsel answered "yes." (Tr. at 102.) Compton further testified that once inside the police station, he permitted appellant to use his (appellant's) cell phone to call his attorney. He also testified that appellant used the restroom at the police station after having been offered a urine screen.

{¶ 18} Thereafter, the trial court found appellant not guilty of the safety belt violation, but guilty of both OVI charges and the marked lanes violation. The trial court then set the matter for sentencing.

{¶ 19} At the sentencing hearing, the trial court merged the OVI charges, and the state elected to have appellant sentenced on the OVI test refusal with prior conviction charge. The trial court sentenced appellant to 180 days in jail, with 160 days suspended upon the successful completion of 2 years' community control. The court also imposed a $525 fine, plus court costs, suspended appellant's driving privileges for a period of two years, and ordered his vehicle immobilized for 90 days. In addition, the trial court imposed a $50 fine, plus court costs, on the marked lanes violation.

{¶ 20} Appellant timely appeals, setting forth the following three assignments of error for our review:

> [I]. Appellant's convictions are against the manifest weight of the evidence.
>
> [II]. The trial court erred when it overruled Appellant's Crim.R. 29(A) motion to acquit made at the conclusion of the State's case-in-chief because the State's case lacked evidentiary sufficiency. The court's denial violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, and Crim.R. 29(A).
>
> [III]. The lower court plainly erred per Crim.R. 52(B) when it convicted Appellant of count two, OVI "refusal," inasmuch as Appellant's prosecution and conviction under R.C.

4511.19(A)(2) was unconstitutional as applied to him and violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 10, 14 and 16 of the Ohio Constitution.

{¶ 21} For ease of analysis, we address appellant's first and second assignments of error in reverse order. In his second assignment of error, appellant contends the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal. We disagree.

{¶ 22} Crim.R. 29(A) provides: "The court on motion of a defendant or on its own motion, after the evidence of either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the * * * complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." *State v. Brown,* 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 27, quoting *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6.

{¶ 23} Sufficiency of the evidence is a legal standard applied to determine whether the state's evidence is legally adequate to support the verdict. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support the verdict as a matter of law, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh,* 90 Ohio St.3d 460, 484 (2001).

{¶ 24} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston,* 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness

credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 25} Appellant was convicted of OVI in violation of R.C. 4511.19(A)(1)(a), which required the state to prove that appellant operated a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them. Appellant was also convicted of R.C. 4511.19(A)(2), which required the state to prove that appellant (1) operated a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them; (2) had a prior OVI conviction within 20 years of the charged offense; and (3) refused to submit to a chemical test after being arrested for OVI and advised of the consequences of refusing or submitting to the test. Finally, appellant was convicted of a violation of R.C. 4511.33(A), which required the state to prove that appellant drove outside his lane of travel.

{¶ 26} Although appellant broadly asserts that his convictions are not "supported by evidentiary sufficiency," he does not challenge the sufficiency of the evidence with respect to any specific element of any of the charged offenses. (Appellant's Brief at 22.) Rather, appellant contends that the trial court erred in denying his Crim.R. 29 motion because the trial court "expressly found that the State had *not proven* its case beyond a reasonable doubt at the time it rested." (Emphasis sic; Appellant's Brief at 25.) Appellant submits that the term "shall" as used in Crim.R. 29(A) mandates that a trial court grant judgment of acquittal when it recognizes the insufficiency of the state's evidence.

{¶ 27} Following defense counsel's closing argument and the prosecution's rebuttal argument,[3] the trial court averred:

> After the initial testimony of the trooper, the Court was not convinced beyond a reasonable doubt as to Mr. Ndiaye's guilt. After hearing from Mr. Ndiaye through his testimony, I don't think he helped himself very well, and the Court became more convinced. And after hearing from the rebuttal witness [Compton], the Court became not totally convinced, but certainly convinced beyond a reasonable doubt.

(Tr. at 107.)

{¶ 28} Thereafter, the court found appellant not guilty of the safety belt violation, but guilty of both OVI charges and the marked lanes charge.

---

[3] The prosecution waived its initial closing argument but reserved the right for rebuttal.

{¶ 29} Appellant contends that the first sentence of the above-quoted language, i.e., that following Compton's initial testimony, the court "was not convinced beyond a reasonable doubt of [appellant's] guilt," amounted to a finding that the state's evidence was insufficient to sustain a conviction of the charged offenses. Thus, argues appellant, the trial court should have granted his Crim.R. 29 motion and dismissed the charges. The state urges that we disregard the trial court's comments as "mere surplusage without legal significance." (State's Brief at 24.)

{¶ 30} We disagree with both arguments. In support of its "surplusage" argument, the state cites *State v. Cattledge,* 10th Dist. No. 10AP-105, 2010-Ohio-4953. There, we found that the trial court's comments were "mere surplusage without legal significance" because they were made after the trial court had found the defendant guilty. *Id.* at ¶ 26, citing *State v. Crawford,* 10th Dist. No. 85AP-324 (Feb. 6, 1986) (noting that upon presentation of evidence and arguments, the trial judge is required to make a general finding of guilt or innocence pursuant to Crim.R. 23(C), and separate findings of fact and conclusions of law are neither countenanced nor permitted; therefore, a trial court's reasoning after a general finding of guilt is mere surplusage without legal significance sufficient to impeach the general findings of guilt). In the present case, the trial court's comments were made prior to its finding of guilt. Thus, *Cattleledge* is inapposite.

{¶ 31} As to appellant's argument, we first note that this case involves a trial to the court. "[A] trial judge is presumed to know the applicable law and apply it accordingly." *State v. Dear,* 10th Dist. No. 14AP-298, 2014-Ohio-5104, ¶ 11. However, an appellate court applies de novo review to the extent that an appellant's assignment of error raises a question of law. *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 10. Here, nothing in the record suggests that the trial court did not understand the law applicable to Crim.R. 29, misapplied such law, or was uncertain about the sufficiency of the evidence. The trial court did not comment upon the evidence or express any concern about its sufficiency. Indeed, the trial court denied the motion without explanation or hesitation.

{¶ 32} Moreover, examining the challenged comment in the context of the trial court's entire statement establishes that the trial court was referring to the credibility of the evidence rather than the sufficiency of the evidence. The court, not yet persuaded by Compton's initial testimony, deferred a finding on appellant's guilt until it heard

appellant's version of the events. The fact that the trial court initially struggled with Compton's credibility does not ipso facto establish that it found that the state's evidence was insufficient. Further, the court's comment that appellant did not "help[] himself very well" plainly evinces a credibility determination, i.e., that the court found appellant's testimony not credible. For these reasons, we cannot conclude that the trial court found the state's case insufficient requiring a grant of appellant's Crim.R. 29 motion for judgment of acquittal.

{¶ 33} The second assignment of error is overruled.

{¶ 34} In his first assignment of error, appellant maintains that his convictions are against the manifest weight of the evidence. Again, we disagree.

{¶ 35} When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.,* quoting *Martin* at 175.

{¶ 36} In conducting a manifest weight review, an appellate court may consider the credibility of the witnesses. *Cattledge,* 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Kurtz,* 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 18, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). As such, we accord great deference to the trier of fact's determination of witness credibility. *State v. Albert,* 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 14. "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris,* 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25.

{¶ 37} The majority of appellant's manifest weight argument challenges Compton's credibility. Appellant first contends that the comment made by the trial court about not being convinced of appellant's guilt beyond a reasonable doubt after Compton's testimony in the state's case-in-chief demonstrated its skepticism about Compton's credibility, particularly as to his interpretation of appellant's behavior and actions. Although the court initially struggled with Compton's credibility, it apparently resolved that struggle in Compton's favor after appellant testified in the defense case and Compton testified on rebuttal. As noted above, the court essentially found appellant's testimony not credible, stating that appellant did not "help[ ] himself very well" and that it became "more convinced" of appellant's guilt after he testified. (Tr. at 107.) The court further stated that after Compton's rebuttal testimony, it became "certainly convinced" of appellant's guilt. (Tr. at 107.) We defer to the credibility determinations of the trier of fact made during the bench trial in this matter. *State v. White,* 10th Dist. No. 15AP-815, 2017-Ohio-810, ¶ 50; *State v. Person,* 10th Dist. No. 16AP-12, 2017-Ohio-2738, ¶ 54.

{¶ 38} Appellant next claims that the cruiser video contradicts Compton's testimony in several respects. Appellant asserts that the video demonstrates that "the marked lane infraction is not egregious," that the "weaving is minimal," that appellant only "briefly straddled the two lanes," and that appellant did not display common signs of driving impairment such as slurred words or difficulty exiting his vehicle. (Appellant's Brief at 18-19.) Appellant further notes that he stumbled only minimally when he performed the field sobriety tests. To the extent that the video contradicted Compton's testimony, defense counsel thoroughly cross-examined Compton on these issues. Further, the trial court heard Compton's testimony and viewed the video evidence. As noted above, it is for the trier of fact to consider conflicting evidence and resolve those conflicts. *State v. Teitelbaum,* 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 122.

{¶ 39} Appellant also challenges Compton's credibility concerning what chemical tests he offered appellant. Appellant maintains that Compton wrongly claimed during his rebuttal testimony that the only chemical test he offered appellant was the urine screen. Appellant argues that the cruiser video establishes that Compton offered appellant a portable breathalyzer test while appellant was seated in the police cruiser. Appellant claims that this inconsistency negatively impacted Compton's credibility.

{¶ 40} To be sure, the cruiser video confirms that while appellant was seated in the cruiser, Compton asked him if he wanted to voluntarily submit to a portable breathalyzer test. However, the testimony to which appellant refers was elicited in response to appellant's assertion that he did not refuse to submit to a urine screen, as Compton never offered that test. Whether appellant was offered and refused a urine screen, not a breathalyzer test, was the focal point of the OVI test refusal with prior conviction charge.

{¶ 41} The trial court heard the testimony provided by both Compton and appellant on this issue and viewed the video evidence. As noted above, the trial court, as the trier of fact, was in the best position to weigh the credibility of Compton's testimony, in the context in which it was given, in light of the cruiser video.

{¶ 42} Finally, appellant asserts that the trial court erred in crediting Compton's testimony over his testimony. Appellant cites his testimony that he had not consumed alcohol prior to the traffic stop, that his knee injury and nervousness could have affected his performance on the field sobriety tests, and that the smell of alcohol came not from his consumption of alcohol but perhaps from the cologne he wore or someone having spilled a drink on him at the club. We reiterate the trial court's comment that appellant's testimony did not aid his cause; indeed, the court became more convinced of his guilt after he testified.

{¶ 43} Moreover, the central issue on the OVI refusal charge was whether Compton asked appellant to submit to a urine screen and whether appellant refused to submit to such test. Compton testified that he asked appellant to submit to a urine test while appellant was seated in the cruiser; the cruiser video confirms that testimony. Appellant testified that Compton never asked him to submit to a urine screen. He further testified that Compton permitted him to use the restroom immediately upon arrival at the police station. The trial court could have found appellant's testimony on this issue incredible, as it is unreasonable to believe that Compton would allow appellant to use the restroom at the police station if he had not already asked appellant to submit to a urine screen and appellant had refused to do so.

{¶ 44} The trier of fact bears the burden of assessing the credibility and veracity of witnesses and "may believe all, part or none of a witness' testimony, giving a witness little or no weight at all." *Parsons v. Washington State Comm. College,* 10th Dist. No. 05AP-

1138, 2006-Ohio-2196, ¶ 21.   As noted above, disagreement over witness credibility is not a sufficient reason to reverse a judgment on manifest weight grounds.  *Harris* at ¶ 25.

{¶ 45} Based on our review of the evidence and reasonable inferences drawn therefrom, we cannot find that the trial court, as trier of fact, lost its way in finding appellant guilty of the two OVI charges and the marked lanes charge. Accordingly, appellant's convictions are not against the manifest weight of the evidence.

{¶ 46}  The first assignment of error is overruled.

{¶ 47}  In his third assignment of error, appellant argues that R.C. 4511.19(A)(2), the OVI refusal with prior conviction statute, is unconstitutional as applied to him under both the United States and Ohio Constitutions.

{¶ 48} Legislative enactments are afforded a strong presumption of constitutionality. *State v. Collier,* 62 Ohio St.3d 267, 269 (1991).  "[I]f at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions." *Id.*  "[T]he party asserting that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail."  *Id.*

{¶ 49}  A court must first determine whether the party is challenging the statute on its face or as applied to a particular set of facts. *Yajnik v. Akron Dept. of Health, Hous. Div.,* 101 Ohio St.3d 106, 2004-Ohio-357, ¶ 14.   "In an 'as applied' challenge, the party challenging the constitutionality of a statute contends that the 'application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional.  The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative.' " *Id.*, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists,* 506 U.S. 1011 (1992) (Scalia, J., dissenting).  When the constitutionality of a statute is challenged as applied to a particular set of facts, a record is required.  *Semenchuk v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 10AP-19, 2010-Ohio-5551, ¶ 30.  Thus, an as-applied constitutional challenge must be raised during the trial court proceedings in order to develop a record.  *Id.*  In the present case, appellant contends the statute is unconstitutional as applied to him because it criminalized his refusal to submit to a urine screen to determine the presence and quantity of alcohol or drugs in his system.

{¶ 50}  Appellant acknowledges that he did not challenge the constitutionality of R.C. 4511.19(A)(2) before the trial court and thus has not preserved the issue for review.  "The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it." *State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 2.  Although it is within a reviewing court's discretion to address a constitutional argument under a plain error analysis, we decline to exercise that discretion here. *State v. Douglas,* 10th Dist. No. 09AP-111, 2009-Ohio-6659, ¶ 61 (a constitutional issue not raised at trial need not be heard for the first time on appeal); *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 74 (declining to address constitutionality of gang specification because the defendant failed to raise it in the trial court).

{¶ 51}  Appellant's third assignment of error is overruled.

{¶ 52}  Having overruled appellant's three assignments of error, we hereby affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

SADLER, P.J., and LUPER SCHUSTER, J., concur.

———————————